Argued and submitted October 24, 1979, affirmed April 14, 1980

HAVILAND, et al, *Petitioners,*
*v.*
LAND CONSERVATION AND
DEVELOPMENT COMMISSION, et al,
*Respondents.*

(No. 78-012, CA 13638)

609 P2d 423

Richard A. Stark, Medford, argued the cause and filed the brief for petitioners.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development Commission. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Eugene F. Hart, Jr., Medford, filed the brief for respondent City of Medford.

Thomas J. Owens, Medford, filed the brief for respondent Jackson County.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Petitioners appeal from an order of the Land Conservation and Development Commission (LCDC or Commission) in which that agency concluded that the City of Medford and Jackson County had not violated statewide planning goals in establishing the urban growth boundaries of Medford which excluded petitioners' property.

In Spring, 1978, the city and county amended their comprehensive plans, which have not yet been acknowledged by LCDC, by passing ordinances each establishing an urban growth boundary around the city of Medford. The boundaries were drawn in order to comply with LCDC Statewide Planning Goal 14. To the end of providing for "an orderly and efficient transition from rural to urban land use," Goal 14 requires that "urban growth boundaries shall be established to identify and separate urbanizable land from rural land."

The ordinances adopted by the city and county differ—the city urban growth boundary is more inclusive than that of the county—but both versions exclude petitioners' property.

Petitioners sought review of the ordinances by LCDC, as authorized by former ORS 197.300(1)(d),[1] which requires the Commission to review, upon "[p]etition by any person or group of persons whose interests are substantially affected, a comprehensive plan provision * * * or other ordinance or regulation alleged to be in violation of statewide planning goals * * *." The LCDC properly limited its review to consideration of whether the local planning authority properly applied the Commission's goals in light of facts found

---

[1] ORS 197.300, 197.305, 197.310 and 197.315 were repealed by Oregon Laws 1979, chapter 772, section 26, effective November 1, 1979. That chapter establishes a Land Use Board of Appeals and provides new procedures for the review of land use decisions. The extent to which the appealability of local decisions, or the scope of review by the board, the commission and this court, must abide the event.

by it and supported by the record. Former ORS 197.305.

That section limits the Commission's review to the record, and former ORS 197.310(3) directs the Commission to enter a final order which must include "a clear statement of findings setting forth the basis for the commission's determination in the proceeding." Under former ORS 197.310(5) the order of the commission may be appealed in the manner provided in ORS 183.480 for appeals from final orders in contested cases. Subsection (2) of that section provides that our review of such orders shall be solely as provided in ORS 183.482[2] (among other sections).

Our review, then, is of the Commission's order, including the findings and conclusions supporting it. If those findings are supported by the evidence from the record on which the Commission relied, and the conclusions are supported by those findings, we may not disturb the order solely because we might reach a different conclusion. *See* ORS 183.482(8)(a) (n. 2, *supra* ).

---

[2] ORS 183.482 provides in pertinent part:

"(8)(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record."

On this appeal, petitioners contend that there are inadequate facts in the record to support the population projection arrived at by the planning staffs, that the city and county erred in failing to adopt site-specific findings explaining why petitioners' land was excluded from the urban growth boundary, that petitioners' land had been committed to urbanization and therefore should have been included within the boundary and that inadequate consideration had been given to Goal 14, the urbanization goal of the statewide planning goals, and also Goals 2, 3, 5, 6, 9, 10, 11 and 12.

Taking the last contention first, the Commission, in its opinion and final order, determined that in establishing an urban growth boundary, which is only a preliminary step in adopting a comprehensive plan, only Goal 14 need be directly considered. When a comprehensive plan is adopted and submitted to the Commission for acknowledgment the other goals must be addressed. Until that time, the other planning goals apply only indirectly through the seven factors of Goal 14.[3]

We accept the agency's determination on the scope and applicability of the goals drafted by it, as we would accept as authoritative an agency's interpretation of a regulation promulgated by it. *See McPherson*

---

[3] Goal 14 requires that "[e]stablishment and change of the boundaries shall be based upon consideration of the following factors:

"(1)   Demonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals;

"(2)   Need for housing, employment opportunities, and livability;

"(3)   Orderly and economic provision for public facilities and services;

"(4)   Maximum efficiency of land uses within and on the fringe of the existing urban area;

"(5)   Environmental, energy, economic and social consequences;

"(6)   Retention of agricultural land as defined, with Class I being the highest priority for retention and Class VI the lowest priority; and,

"(7)   Compatibility of the proposed urban uses with nearby agricultural activities."

*v. Employment Division,* 285 Or 541, 549, n 6, 591 P2d 1381 (1979).

The Commission properly viewed a challenge to an urban growth boundary under former ORS 197.300(1)(d) in limiting its role to consideration of whether the local planning authorities had properly applied Goal 14 in light of facts found by the planning authorities and supported in the record. The Commission viewed Goal 14 criteria as "accountability safeguards" to provide a means for assessing urbanization decisions, stating that if it appears that

"the planning body fully considered all of the urbanization criteria, and the facts pertinent to the application of those criteria, and if the facts reported have support in the record, the local decision should be upheld even though the Commission or a court might have balanced the criteria differently or drawn a different conclusion from the facts presented."

The Commission proceeded to review each of the Goal 14 criteria in light of the record and found that each of them was considered and that the findings relating to those criteria are supported by the record. Based on that review, the Commission entered its own findings with specific reference to the record supporting them. Those findings are supported by the record and support the Commission's order. No useful purpose would be served by detailing them here, except to note the disposition of the specific contentions made by petitioners here.

The LCDC found that petitioners' challenge to the population projection did not manifest a violation of Goal 14. The first two criteria of Goal 14, consideration of "[d]emonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals" and of "[n]eed for housing, employment opportunities and livability" necessitate an estimation of the area's future population. Petitioners contend that the city and county population projections for the year 2000 are too low and that

more land will be needed to meet the criteria than found by the city and county. The Commission, however, found that there was substantial evidence in the record to support the conclusion that, if anything, the amount of land included within the urban growth boundary exceeded the needs of the future population as estimated by the city and county, and, in fact, was in excess of the needs of the future population as projected by petitioners.[4] There is substantial evidence in the record to support this finding.[5]

Petitioners next argue that site-specific findings should have been made to explain the exclusion of their land because of their extensive participation, including attendance at all planning commission hearings and presentation of oral and written testimony, which made them parties to the proceeding. Although decisions that result from judicial or quasi-judicial proceedings may require specific findings relating to each party involved, the Commission properly concluded that these proceedings were essentially legislative and do not require findings regarding the specific property of each landowner affected. *See Culver v. Dagg*, 20 Or App 647, 532 P2d 1127, *rev den* (1975).

Moreover, LCDC points out that the record does contain findings with respect to the area of land which includes petitioners' property, which findings refute petitioners' additional contention that their property must be included because of its commitment to urbanization. The city and county considered that criterion for inclusion of property, but were aware that the drawing of an urban growth boundary involved, in addition, consideration of the seven Goal 14 criteria. A certain amount of land was included based upon an

---

[4] The hearings officer calculated that the amount of vacant land included within the urban growth boundary would support a growth rate of 4.3%, a higher rate "than seriously contended for by any of the petitioners."

[5] LCDC suggests that the urban growth boundary may in fact be over-inclusive, that is, that the estimate of the future land needs is too high. That question is not in issue in this case.

estimate of the future need for urban land and the findings reflect a concern that the inclusion of more land, including the area in which petitioners' property is located, within the boundary would violate Goal 14 by including more land than was warranted by that estimate. Absent evidence that the need for urbanizable land cannot be filled without including either committed lands or, for example, class I-IV agricultural lands, there is no reason why land committed to urban use may not be excluded for reasons which outweigh the commitment factor. The judgment is essentially a legislative one, subject to compliance with Goal 14.

The Commission's findings that the city and county considered Goal 14 are supported by substantial evidence in the record. We affirm its conclusion and final order.

Affirmed.