Argued and submitted June 2, 1982, affirmed Februrary 2, reconsideration denied March 4, petition for review denied March 29, 1983 (294 Or 682)

# SHADYBROOK ENVIRONMENTAL PROTECTION ASSOCIATION, (SEPA) et al,
*Petitioners - Cross-Respondents,*

*v.*

# WASHINGTON COUNTY et al,
*Respondents - Cross-Petitioners.*

(81-023, CA A22835)

658 P2d 1168

Edward J. Sullivan, Portland, argued the cause for petitioners - cross-respondents. With him on the briefs was O'Donnell, Sullivan & Ramis, Portland.

DeMar Batchelor, Hillsboro, argued the cause for respondents - cross-petitioners Karban Rock, Inc. and Jean Jenkins. With him on the brief were Schwenn, Bradley, Batchelor and Brisbee, and Alan S. Bachman, Hillsboro.

Alan S. Bachman, Assistant County Counsel, Hillsboro, argued the cause for respondent - cross-petitioner Washington County. With him on the brief were DeMar Batchelor, and Schwenn, Bradley, Batchelor and Brisbee, Hillsboro.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioners seek review of a Land Use Board of Appeals' (LUBA) final opinion and order permitting operation of a quarry—a nonforest use—under Statewide Planning Goal 4˙ if, after remand and further consideration by the county, a finding is made that forest lands will be retained and protected for existing and potential uses despite the nonforest use allowed. Petitioners argue that LUBA erred in determining that a quarry may be permitted on forest lands without taking an exception to Goal 4 as provided for in Goal 2, Part II. Respondents cross-appeal and assert that LUBA's opinion and order was not issued within the time allowed by Or Laws 1979, ch 772 and that, therefore, the county planning commission's determination should therefore be considered affirmed in accordance with Or Laws 1979, ch 772, § 4(8). We affirm.

Before reaching the merits, we first address the procedural question raised on cross-appeal. Or Laws 1979, ch 772, § 4(8), provides:

> "The board shall issue a final order within 90 days after the date of filing of the petition. If the order is not issued within 90 days and no extension of time has been stipulated to by the parties, the decision being reviewed shall be considered affirmed and decision may then be appealed in the manner provided in section 6a of this 1979 Act."

Petitioners filed for review with LUBA on May 21, 1981. On July 30, 1981, all parties stipulated to extend the time for LUBA to prepare and file its opinion and order until the Land Conservation and Development Commission's (LCDC) September 24, 1981, meeting and for a reasonable time thereafter. At the September LCDC meeting, counsel for petitioners appeared and requested a further extension of time to allow him to review the Department of Land Conservation and Development's (Department) recommendation and to submit a written statement. Respondents were not present at the meeting. Counsel for the Department stated:

> "The Department would not object to a request for postponement because of the significance of this issue. I have been in communication with the other parties; they

also would agree to the postponement and they would agree to a stipulation to postpone the 90-day time limitation to allow this matter to come back before the Commission at the October Commission meeting."

The communication referred to by Department counsel was an undocumented phone conversation in which respondents agreed to a further continuance on the condition that the LCDC grant them oral argument on the Goal 4 issue. Oral argument was not granted. Respondents argue that, because the condition on which their stipulation was based did not occur, the extension of time was not "stipulated to by all the parties," as required by ORS ch 772. They further assert that, because LUBA's order was not issued within the time required, the county commission's determination should be considered affirmed and final because the time to appeal from that determination has expired. Or Laws 1979, ch 772, § 6a(3).

Petitioners argue that respondents' silence and inaction after receipt of the following approval of the extension of time constituted a waiver of the objection made on appeal:

"The Land Conservation and Development Commission hereby approves a request for a postponement in LUBA 81-023, at the request of all parties, to allow consideration at the October LCDC Commission meeting.

"DATED THIS 30th DAY OF SEPTEMBER, 1981.

"FOR THE COMMISSION: _____

(James F. Ross) for

W. J. KVARSTEN,
Director
Department of Land
Conservation and Development"

We agree.

It is elementary that a litigant must make known his objection in the lower tribunal in order to urge the objection on appeal. The purpose of this rule is to allow the tribunal to correct any error and obviate the necessity of reversal and remand for additional proceedings. *See Bentley v. SAIF,* 38 Or App 473, 590 P2d 746 (1979). Although respondents did move to vacate the order on these grounds,

they did not do so until after LUBA's final opinion and order was issued. By remaining silent, respondents failed to give LCDC the opportunity to avoid committing an error. Furthermore, their inaction jeopardized petitioners' right to appeal. Respondents do not contend that they did not receive notice of the extension or that they were prevented from objecting in a timely fashion. The failure to respond to LCDC's determination within a period in which it could have been corrected resulted in a waiver of the right to object to the timeliness of the order after its issuance.

We now turn to the merits.

LUBA found the facts to be as follows:

"Karban Rock, Inc. and Jean Jenkins * * * requested a conditional use permit to allow the placement of a rock quarry and crushing operation on a twenty-acre site located approximately five miles north of the City of North Plains in Washington County. The Washington County Comprehensive Plan places the site within a rural intermediate area. Applicant's environmental impact report describes the site as timbered hillside. On the southern boundary of the site is the old Shadybrook landfill. The record indicates the landfill is full, no longer being used and is being reclaimed by natural vegetation and timber growth. There appears to be spontaneous combustion still going on in the area of the landfill as is evidenced by periodic venting of smoke. Also on the southern boundary of the site is the Washington County shooting range. Surrounding uses include private residences and agricultural operations such as tree farms. Shadybrook Lumber Company lies 1 1/2 miles south of the site.

"The applicant asserts that approximately 8 to 15 acres of the 20 acre site may yield rock for a period from 5 to 8 years. The exact site, while being described as timbered hillside, seems to consists of open land with a stand of trees around its perimeter. The open portion of the subject 20 acres is to be used for the quarry operations. The open area is said to contain extensive rock outcropping and is covered by a shallow overburden of soil. The county's conditions include a requirement that the trees not be removed or altered in the quarry operation."

Washington County had approved the conditional use. LUBA held that the county had failed to make sufficient findings of fact to support its conclusions that 1) the

proposed use is compatible and consistent with Goal 3 and 4 and 2), therefore, no exception to the Goals is required. It held that Goals 3 and 4 applied to the site. LUBA further found that Goals 5, 7, 11, 12 and 14 were not sufficiently addressed to meet the standards of ORS 215.416.[1]

LCDC accepted LUBA's proposed opinion and order, except as it related to Goals 3 and 4. It determined that:

"An exception to the Agricultural Lands Goal is not required if the proposed land use decision involves one of the farm or nonfarm uses permitted in an EFU zone under ORS 215.203-.213. An exception to the Forest Lands Goal is not required if the proposed land use decision is consistent with forest uses as defined in Goal 4. (Exceptions Process Policy, Part II, March 10, 1978; amended May 3, 1979).

"A rock quarry is a nonfarm use permitted by ORS 215.213(2)(b). Therefore, a rock quarry is consistent with Goal 3 and does not require an exception.

"Farm and nonfarm uses may also be allowed under Goal 4 as nonforest uses if at the time of the decision a finding is made that the forest lands will be retained and protected for existing and potential forest uses, despite the nonforest use allowed."

LUBA thereafter issued its final order remanding the matter to the county.[2]

---

[1] ORS 215.416 provides, in pertinent part:

"* * * * *

"(6) Approval or denial of a permit shall be based upon and accompanied by a brief statement that explains the criteria and standards considered relevant to the decision, states the facts relied upon in rendering the decision and explains the justification for the decision based on the criteria, standards and facts set forth.

"(7) Written notice of the approval or denial shall be given to all parties to the proceeding."

[2] LUBA did not believe that its opinion was "inconsistent with the above determination" but pointed out what it considered an "inherent contradiction" in LCDC's analysis:

"How can a finding be made that a *nonforest use* on forest lands will retain the land for *existing forest uses?*" (Emphasis in original.)

As the balance of this opinion indicates, we do not share LUBA's doubts on this point.

Petitioners assert that a gravel quarry, a nonforest use, is incompatible with the forest uses protected by Goal 4 and that the use may therefore be allowed only through the exception process provided by Goal 2. Respondents claim that, because the site is zoned for agricultural as well as forest use and because a quarry is a nonfarm use permitted without an exception under ORS 215.213(2)(b)[3] in any area zoned for exclusive farm use, a quarry should also be permitted on this forest land without an exception.[4']

■ LUBA found that the site is presently zoned as an Agricultural and Forestry District. Petitioners would characterize the area as exclusive forest land, while respondents stress the fact that the land could have been zoned for exclusive farm use. However, the county, LUBA and LCDC found that both Goal 3 and 4 are applicable. We therefore consider the site in the same manner and apply the rule set forth in *Flury v. Land Use Board,* 50 Or App 263, 623 P2d 671 (1980): when considering "overlapping lands" before acknowledgement, *both* agricultural and forest uses must be adequately protected. Under this dual-goal analysis, we find respondents' initial premise unpersuasive. The fact that quarrying is statutorily excepted from the constraints of Goal 3 is not by itself a sufficient rationale for a finding that such a use does not violate Goal 4. *Flury* requires that the objectives of both goals be given equal consideration. The issue to be resolved, therefore, is whether a quarry would violate Goal 4, thereby requiring an exception under Goal 2, or whether that use can instead be found to be compatible with forest land protection and therefore be permitted as a conditional use.

---

[3] ORS 215.213(2)(b) provides:

"The following nonfarm uses may be established, subject to the approval of the governing body or its designate in any area zoned for exclusive farm use:

"* * * * *

"(b) Operations conducted for the mining and processing of geothermal resources as defined by ORS 522.005 or exploration, mining and processing of aggregate and other mineral resouces or other subsurface resources."

[4] Respondents also dispute LUBA'S order on the ground that the county commission in fact made sufficient findings of compatibility with Goal 4. That is a matter for cross-appeal. Because respondents raise the question only in response to petitioner's argument, we need not and do not consider it.

■ Goal 2, Part II provides a procedure and standards by which goal exceptions may be taken by local governments. The process serves as a safety valve when "it is not possible to apply the appropriate goal to specific properties or situations." LCDC Publication, Common Questions About the Exceptions Process, at 1 (March 10, 1978; amended May 3, 1979). However, this mechanism for conflict resolution may not be used as a means by which to substitute local policy for the policies embodied in the statewide planning goals. *See Teamsters v. Hood River Cty.,* 2 LCDC 83, 107 (1979). Accordingly, an exception is authorized only on a showing that need, alternatives, consequences and compatibility have been considered and that "compelling reasons and facts" demonstrate that goal compliance is practically impossible. *Still v. Board of County Comm'rs,* 42 Or App 115, 600 P2d 433 (1979), *rev den* (1980).

The strict exception standards and the underlying policy result in a relatively narrow range of legally acceptable exceptions. In specific instances, however, the proposed use may fall short of a goal violation and may be allowed as a variance, nonconforming use or conditional use. That is specifically contemplated in the guidelines for Goals and 4:

> "An exception is not required if the decision involves a use permitted in an EFU Zone under ORS 215.203 -.215, is consistent with forest uses defined in Goal 4 or if findings can be made that the land is built on or irrevocably committed to nonfarm or nonforest uses in urban or rural areas." LCDC Publication, Exceptions Process Policy, Part II, p 1 (March 10, 1978; amended May 3, 1979).[5]

---

[5] Similarly, an LCDC policy paper entitled "Agriculture/Forestry Goals interrelationship" provides criteria for nonforest uses on overlapping lands.

*"Siting of Nonforest Uses.* Zoning ordinances should include criteria for the siting of nonforest uses. These criteria should minimize conflicts with the predominant forest uses. The criteria should include, but may not be limited to, the following:

"a. is compatible with forest uses;

"b. will not interfere with forest practices;

"c. will maintain the stability of the overall land use pattern of the area;

"d. considers forest site productivity and minimizes the loss of productive forest lands; and

■ Petitioners maintain that it is impossible to conserve forest lands for forest uses if a nonforest use, a quarry, is conditionally permitted on Goal 4 land. We disagree. As indicated in the LCDC policy papers cited above, nonforest uses may be found to be compatible with forest land, so long as the preservation of values embodied in Goal 4 is satisfactorily addressed. For example, in *1000 Friends of Oregon v. Bd. of Comm'rs of Clackamas County*, 3 LCDC 113 (1979), conditional use ordinances for forest land were considered in connection with commercial skiing:

> "If a ski lodge, lift, or parking lot is to be compatible with timber use * * * it will have to occupy ground which is not suitable for timber use. It will also have to be sited and constructed in such a way as not to interfere with accepted timber practices and as not to materially alter the stability of the overall land use pattern of the area. If, as counsel contends, the criteria are intended to incorporate the protections imposed by Goal Four, the effect of the ordinance is to prohibit those uses except where the applicants can show that they would not violate Goal Four."

In other words, there are circumstances in which forest lands can be retained and protected for existing and potential uses despite the nonforest use conditionally allowed. However, a clear showing of compatibility with and the retention and protection of forest land must appear in the record. If such findings cannot be demonstrated, the use cannot be permitted, unless an exception is justified.

■ We conclude that LUBA's opinion and order as modified by LCDC is correct. There is nothing in the present record to indicate that the county *could not* find facts meeting the foregoing criteria for approval of a conditional use. Remand to the county to address the pertinent issue is appropriate. We stress, however, that the order requiring the county to make findings that forest lands will be retained and protected for existing and potential forest uses, despite the nonforest use allowed, is not an empty formality. Findings must be based on concrete facts and must demonstrate how the proposed use will further the

---

"e. will meet standards relating to the availability of fire protection and other rural services and will not overtax those services." LCDC Policy Paper, Agricultural/Forestry Goals Interrelationships at 2.

objectives and policies of the statewide planning goals. *Sunnyside Neighborhood v. Clackamas Co. Comm.*, 280 Or 3, 569 P2d 1063 (1977). If such findings cannot be made, the exception process must be followed.

Affirmed.[6]

---

[6] Given our disposition of the cross-appeal, we need not address petitioner's second assignment of error.