PUBLISHERS PAPER CO. et al,
*Petitioners (below),*
HEMPHILL,
*Petitioner,*
*v.*
BENTON COUNTY et al,
*Respondents.*

(82-035; A26344)

665 P2d 357

Richard C. Benner, Portland, filed the brief for petitioner.

Jeffrey G. Condit, Assistant Benton County Counsel, Corvallis, filed the brief for respondent Benton County.

John L. Williams and Tammy T. Williams, Philomath, filed the brief pro se for respondents John L. Williams and Tammy T. Williams.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Petitioner Carol Hemphill appeals from a final order of the Land Use Board of Appeals (LUBA) that affirmed Benton County's issuance of a conditional use permit for a dwelling on forest land. She contends that LUBA erred (1) by failing to hold that approval of a forest dwelling on a parcel smaller than the minimum lot size violated Benton County's zoning ordinance, (2) by holding that Benton County did not misapply the "compatability" criterion of its zoning ordinance and (3) by holding that statewide planning Goal 4 (Forest Lands) authorizes dwellings not necessary for commercial production of wood fiber on land suitable for commercial forest uses. We affirm.

The Williamses filed an application for a conditional use permit for placement of a single-family residence for forest-management purposes on a 27.4-acre parcel of forest land. Benton County approved the application. Petitioner appealed that decision to LUBA. LUBA filed a Proposed Opinion and Order for submission to the Land Conservation and Development Commission (LCDC) that held that approval of the application violated Goal 4 (Forest Lands), because the proposed residence was not necessary for forest management of the subject property. LCDC disagreed with LUBA's interpretation of Goal 4, and, pursuant to Oregon Laws 1979, chapter 772, section 6(3),[1] it directed LUBA to make a new order consistent with LCDC's determination. LUBA amended its order and resubmitted it to LCDC. LCDC entered a "Determination on Reconsideration," again rejecting LUBA's interpretation of Goal 4. LUBA then entered its Final Opinion and Order upholding Benton County's decision.

---

[1] Or Laws 1979, ch 772, § 6(3) provides:

"The commission shall review the recommendation of the board and any exceptions filed thereto. The commission shall allow the parties an opportunity to present oral argument to the commission unless the board recommends that oral argument not be allowed and the commission concurs with the board's recommendation. The commission shall be bound by any finding of fact of the city, county, special district or state agency for which there is substantial evidence in the record. The commission shall issue its determination on the recommendation of the board and return the determination to the board for inclusion in the board's order under section 5 of this 1979 Act, within such time as is necessary to allow the board to prepare and issue a final order in compliance with the requirements of section 4 of this 1979 Act. If additional time is required, the commission shall obtain the consent of the parties for a postponement."

We review for substantial evidence. The following findings of fact were adopted by LUBA from the county's order:

"Benton County granted approval for a dwelling in the county's forest zone (FC - 40 acre minimum lot size), for a 27.4 acre parcel. The parcel is owned by the owner of a contiguous 6.9 acre parcel which already has a residence. The findings indicate the following about creation of these parcels:

" 'The parcel was first created in 1967 when Tax Lot 300 was sold separately from Tax Lots 400 and 401 (M-6920, M-2020, M18159, CS 4373). In April of 1975, Tax Lots 300 and 400 were sold as one parcel (M-55011) and have been described under one deed since that time. The parcel to the east is held in the same ownership as the subject property and contains the owner's residence. The applicants are negotiating to purchase the subject parcel on contract.'

"The county found that the predominant soil type on the 27.4 acre parcel 'is Jory silty clay loam with a forest site Class 2.' The county further found 'the soil is well suited for timber production.'

"The findings state the 27.4 acre parcel was selectively logged in 1978. The present owner was found to have neither the financial nor physical resources to conduct 'good forest management practices' on the property (both parcels). The applicants have expressed their intention to intensively manage the property for forest purposes, but can only do so economically if allowed to erect a dwelling and live on the property. The county found the applicants were sincere and qualified to reforest the property. The county also found the 27.4 acre parcel would not be incompatible with adjacent forest uses as the parcel would itself by used for such purposes. The county approved issuance of a permit conditoned upon the applicants' reforestation of nine of the 27.4 acres. The applicants submitted a management plan, but the management plan was not made a condition of the approval. The county did require that reforestation of the entire parcel occur before the end of 1987, although it is unclear what enforcement authority the county has to insure this condition is met. The county found the dwelling 'could potentially increase the risk of fire.' Issuance of the permit was, thus, conditioned upon the applicants' 1) maintenance of a 30' wide firebreak around the house; 2) installation of spark arresters for the chimney and fire retardant roof treatment; and 3) siting the house no closer than 300 feet from the south and west property lines.

"Lands surrounding the 27.4 acre parcel, with the exception of the 6.9 acre parcel, are large ownerships in commercial forest production. Starker Forests owns 576 acres to the south, and Hull-Oakes Lumber Company owns 822 acres to the north.

"In granting approval, the county applied numerous policies of the comprehensive plan as well as the requirements of its conditional use ordinance with which any forest dwelling in the FC zone must comply. The county did not address Goal 4 directly, although the county's plan has not received acknowledgement."

■ Petitioner first contends that LUBA erred by failing to hold that approval of a forest dwelling on a parcel smaller than the minimum lot size violated Benton County's zoning ordinance. The area is zoned forest land, 40-acre minimum. Petitioner points out that the county erroneously applied criteria under III.04(2) of the Benton County Zoning Ordinance that applied to applications for a "forest-related" dwelling on parcels of 40 acres or more. The subject parcel consists of only 27.4 acres. LUBA dismissed this error as technical, noting that the standards in the county's ordinance III.04(3) for approval of nonforest dwelling on parcels of less than 40 acres are identical to those contained in III.04(2), except only that a nonforest dwelling must be set back 300 feet from contiguous resource property. Here, the county imposed such a set-back as a condition for approval of the permit.

LUBA considered the county's treatment of the application as one for a forest-related residence "of no merit because the criteria which the County addressed were the same as those for a nonforest dwelling." The county specifically found that the applicants also satisfied the criteria contained in III.04(3) for placement of a nonforest-use dwelling in an FC-40 zone on a lot smaller than the minimum size. The county's characterization of the application as a forest-related dwelling was error. However, the error was cured or rendered harmless by the county's concurrent finding that the application also met the criteria for a nonforest-use dwelling. Because identical criteria were at issue, no party was prejudiced by a lack of notice. We find no error.

Petitioner next asserts that LUBA erred in holding that the county did not misapply the "compatibility" criterion of its zoning ordinance. In order to approve a nonforest use on

land zoned for forest use, the criteria of III.04(3)(a) must be met. Among other things, the county must find that the nonforest use "is compatible with existing forest uses." We conclude that the county erroneously compared the applicants' plan to grow trees on the parcel with the existing surrounding uses. It should have compared the building of a nonforest-use dwelling with surrounding forest management in its determination of whether the dwelling was compatible with existing forest uses. LUBA acknowledged this error, but it concluded that sufficient evidence existed in the record to support the county's findings on III.04(3)(b) and that these findings also satisfied the requirement of III.04(3)(a) and obviated a need to remand the case to the county for a finding on this issue.

Zoning ordinance III.04(3)(b) requires that a dwelling "not seriously interfere with accepted forest practices on adjacent lands." In determining whether the applicants had met III.04(3)(b), the county found:

> "Condition 6 for approval of this request requires placement of the dwelling over 300 feet from both the south and west property lines. No evidence was presented which would indicate that the proposed residence would adversely impact directly on the adjoining forest parcels other than Publishers testimony generally that it opposed placement of dwellings in forest zones due to possible conflicts between forest and residential uses. Creeks separating the subject property from the Starker Forest property to the west, and bordering highway 20 to the north, will lessen potential herbicide spray conflicts because the Forest Practices Act prevents spraying next to streams. The board concludes that the proposed residence will not interfere with adjoining timber production."

LUBA held that these findings support the conclusion that the dwelling will be compatible with existing forest uses. The record also contains findings supported by the evidence that applicants intend to return much of the parcel to timber production that had lapsed because of the present owner's inability to manage the property. If the findings are supported by evidence in the record on which LUBA relied and its conclusions are supported by the findings, we may not disturb the order on review solely because we might have reached a different conclusion. *Haviland v. LCDC,* 45 Or App 761, 764, 609 P2d 423 (1980). We conclude that substantial evidence

exists in the record to support the county's findings and the conclusion that LUBA drew from them.

■      Petitioner finally contends that the county's decision violates Goal 4 which provides: "Forest land should be retained for the production of wood fiber and other forest uses. Lands suitable for forest uses shall be inventoried and designated as forest lands." The county did not consider Goal 4 in its determination, but failure to consider a statewide planning goal is not a ground for reversal if the county's decision conformed as a matter of law to the goals. *1000 Friends v. Benton County,* 32 Or App 413, 575 P2d 651, *rev den* 284 Or 41, 584 P2d 1371 (1978). LUBA found that the county's decision conformed to Goal 4. Petitioner contends, however, that LUBA misinterpreted a directive from LCDC and that its misinterpretation violates Goal 4.

■      LUBA had submitted a proposed Opinion and Order which held that the conditional use permit violated Goal 4, because the proposed dwelling was not necessary for timber management. LCDC rejected LUBA's proposed opinion, disagreeing with the proposition that a dwelling may be allowed under Goal 4 only if the dwelling is found to be necessary for forest management. LCDC stated that a dwelling "may still be allowed on land zoned for forest uses if it is found that forest land will be retained for forest uses despite the dwelling." LCDC directed LUBA to apply this standard to the facts of the case to determine whether the county's decision complied with Goal 4.

In a memorandum to LCDC, LUBA expressed difficulty with the concept that a nonforest-use dwelling could exist on forest land and, at the same time, that that land could still be retained for forest uses. LUBA proposed an amendment to LCDC's statement that would draw a distinction between "forest land" and "land zoned for forest use," noting that the latter would encompass pockets of land contained in general forest areas that are actually unsuitable for forest land. LUBA suggested that nonforest uses be permitted only on such land in order to retain "forest land" for forest use. LCDC rejected this suggestion, and in a footnote explained:

> "There are two categories of nonforest uses which may meet the Goal to retain forest land for forest uses. One, accessory

uses or those uses incidental and subordinate to and customarily provided in conjunction with the forest use. Examples might include helipads and aggregate mining for forest roads. Accessory uses could be provided outright on lands zoned for forest use. The second category of nonforest uses are incompatible uses which if subject to standards under a review procedure may retain forest land for forest uses. Examples might include mineral extraction, personal airports, churches and dwellings. These uses have a potential of not retaining forest land for forest uses. Therefore they could only be allowed under conditions which assure:

"1.  The proposed use is compatible with and will not significantly affect existing forest uses on the site or surrounding land;

"2.  The proposed use will not interfere with forest operations and practices;

"3.  The proposed use will not alter the stability of the overall land use pattern in the area; and

"4.  The proposed use is consistent with forest policies in the comprehensive plan and the purposes of the zone."

LUBA applied this set of criteria to the findings made by the county. Because LCDC's policy was new, the county did not have an opportunity to make findings that addressed the policy directly. LUBA held, however, that the county's findings demonstrated several respects in which the dwelling might have a positive impact on existing forest uses on the property. LUBA also held that the county's findings and analysis on the criteria utilized for determining compliance with the county zoning ordinances applied with equal force to the remaining factors enunciated by LCDC. LUBA concluded, therefore, that the county's approval of the conditional permit was consistent with Goal 4.

Plaintiff contends that LUBA's initial determination was correct and argues that Goal 4 does not allow a use on forest land that is not listed as a "forest use" or is not necessary for the accomplishment of a forest use. We already have held that there exist circumstances in which forest lands can be retained and protected for existing and potential uses despite the nonforest use conditionally allowed. *See*

*Shadybrook Environ. Protect. Assn. v. Wash. Co.,* 61 Or App 474, 658 P2d 1168, *rev den* 294 Or 682 (1983). We conclude that LUBA applied the proper criteria in determining whether the county's decision comports with Goal 4.

Affirmed.