Argued and submitted February 25, reversed and remanded August 10, 1983

## MARION COUNTY et al,
*Respondents,*

*v.*

## FEDERATION FOR SOUND PLANNING et al,
*Petitioners.*

(CA A25412)

668 P2d 406

Edward J. Sullivan, Salem, argued the cause for petitioners. On the brief was Corinne C. Sherton, Salem.

Robert C. Cannon, Marion County Counsel, Salem, argued the cause and filed the brief for respondent Marion County.

Mary J. Deits, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development

Commission. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioners[1] seek judicial review of an order of the Land Conservation and Development Commission (hereinafter LCDC or the Commission) acknowledging the Marion County Comprehensive Plan as being in compliance with the statewide land use planning goals. We conclude that LCDC erred by (1) approving the plan despite possible goal violations, (2) approving a goal exception that was taken under an invalid procedure and (3) failing to address certain of petitioner Families for Responsible Government's objections. Accordingly, we reverse the acknowledgment order and remand to LCDC.

■ Marion County first submitted its comprehensive plan to LCDC for acknowledgment in June, 1980. The following December, LCDC issued a "continuance order," citing a number of goal violations in the plan and granting the county 120 days to bring the plan into compliance. In May, 1981, the county submitted its second acknowledgment request. LCDC again found goal violations and granted the county an additional 150 days to make corrections. On April 1, 1982, the county submitted its plan for the third time. Petitioners filed objections, as they had to each previous acknowledgment request.[2] In May, the Department of Land Conservation and Development (DLCD) issued a staff report recommending acknowledgment. LCDC held a hearing on the acknowledgment request and, on June 10, 1982, issued an acknowledgment order. The present petition for judicial review followed.

Petitioners first contend that LCDC erred by

"* * * issuing a compliance acknowledgment order for a plan containing violations of the goals on the ground that the violations were 'de minimus.' "

Petitioners' objection derives from the following language in section 3 of the acknowledgment order:

"The Commission finds that Marion County's Plan is in compliance with the Statewide Planning Goals. There appear

---

[1] Petitioners include three citizen groups (Federation for Sound Planning, Families for Responsible Government (FRG), Shaw Cause, Inc.) and 15 individuals.

[2] Shaw Cause, Inc., filed objections after all three acknowledgment requests. FRG did not file objections until the Marion County plan was before LCDC for the third time.

to be arguable deficiencies in the plan for certain areas (particularly exception areas: Ankeny and Talbot Interchanges, Chinook Phase 5, Drury, Steel Bridge and White Cloud), if measured in isolation against the Goals. However, in view of the complexities of the problems, the extent of involvement in good faith planning, the relatively small proportion of land at issue and the positive achievements of the plan in resource protection, the Commission finds that the plan, viewed as a whole, complies with the Goals, including Goal 2, and that discrepancies are of a *de minimus* nature, so that acknowledgment is warranted."

Petitioners assert that this language demonstrates that LCDC acknowledged the plan, despite a finding of goal violations, because it deemed the violations unimportant in comparison to other factors. According to petitioners, ORS 197.251, the statute governing compliance acknowledgment, does not authorize such an action.

LCDC responds to petitioners' contentions with the argument that "the legislature intended that LCDC be able to * * * grant acknowledgment if a jurisdiction * * * had achieved substantial [as opposed to total] compliance with the goals." To support its position, LCDC relies on three statutes that appear in ORS chapter 197. ORS 197.040(1)(b) directs LCDC to "allow for the diverse administrative and planning capabilities of local governments" when the Commission designs its administrative rules. ORS 197.230(4) pertains to LCDC's goal drafting responsibilities, directing the Commission to "[d]esign goals to allow a reasonable degree of flexibility in the application of goals by state agencies * * * and [local governments]." ORS 197.340 instructs LCDC and others to "give the goals equal weight in the planning process." According to LCDC, these provisions illustrate the legislature's intent that LCDC "be flexible in carrying out its statutory responsibilities" and that they also somehow authorize the application of a "substantial compliance" standard to acknowledgment requests. We disagree.

First, we note that the statutes LCDC cites have nothing to do specifically with LCDC's responsibility to acknowledge comprehensive plans. They therefore do not *directly* authorize the employment of a "substantial compliance" standard. As an aid to interpreting ORS 197.251, which does govern compliance acknowledgment, the three

statutes may hurt LCDC's argument more than they help it. They demonstrate that, when it intended LCDC to be "flexible" with respect to the performance of its statutory duties, the legislature was capable of saying so and fully aware of the need to express its intentions clearly.

We now turn to the language of ORS 197.251. That statute provides, in pertinent part:

"(1)   Upon the request of a local government, the commission shall by order grant, deny or continue *acknowledgment of compliance with the goals.* * * *

"* * * * *

"(5)   A commission order granting, denying or continuing acknowledgment shall include a clear statement of findings which sets forth the basis for the approval, denial or continuance of acknowledgment. The findings shall:

"(a)   Identify the goals with which the comprehensive plan and land use regulations *comply* and those with which they do *not comply;* and

"(b)   Include a clear statement of findings in support of the determinations of *compliance* and *noncompliance.*

"* * * * *." (Emphasis supplied.)

It is significant that the emphasized portions of the statute speak in terms of "comply" and "compliance with the goals," rather than "substantial compliance," "compliance with the spirit of the goals" or other words to that effect. LCDC cites no legislative history to indicate that the legislature intended "substantial" compliance to serve as the basis for acknowledgment, and we are aware of none. Were we to hold substantial compliance adequate, we would be reading into the statute words that are not there and a meaning that is not fairly implied. We may not do so. Accordingly, we hold that LCDC may only acknowledge a comprehensive plan if it finds that the plan fully complies with all applicable goals.

■       Marion County attempts to justify LCDC's order on a different ground. The county contends that, in the first sentence of section 3 of its order, LCDC found full goal compliance and that the remaining sentences in that paragraph are merely "dicta." We disagree.

The last three paragraphs of section 3 state:

"* * * * *

"The Commission conclusion is further supported by the Commission obligation in ORS 197.230(1) to 'consider existing comprehensive plans of local governments * * * in order to preserve functional aspects of land conservation and development,' and in ORS 197.230(4) to 'allow a reasonable degree of flexibility in the application of Goals.' While these requirements are written as considerations in [the] adoption process, the Commission believes they must be relied upon in applying the Goals as well. This view is reinforced by the obligation of 'the Commission, the department, and local governments to give the Goals equal weight in the planning process' (ORS 197.340)."

"The Commission (in ORS 197.040[(1)] (b)) is required to recognize differences among local governments. 'In designing its administrative requirements, the Commission shall allow for the diverse administrative and planning capabilities of local governments.'

"The Commission cautions other jurisdictions not to take parts of the plan or the report out of context and use them as standards because the determination of acknowledgment is limited to the facts in this case."

We think that this language demonstrates that the Commission made a conscious decision to acknowledge a plan containing goal violations. Neither the statutory rationalization nor the warning to other jurisdictions would have been necessary if LCDC had perceived its action as an acknowledgment based on full compliance with all applicable goals.

We therefore conclude that section 3 of the LCDC order can fairly only be read as a determination that the plan should be acknowledged despite possible goal violations in six areas: the Ankeny and Talbot interchange areas, Phase 5 of the Chinook subdivision, the White Cloud and Drury subdivisions and the site of a proposed destination resort at Steel Bridge. Because ORS 197.251 requires LCDC to support each acknowledgment order with findings that the comprehensive plan conforms to all applicable goals, the Commission's action was erroneous.[3]

---

[3] In a separate assignment of error, petitioners challenge the merits of the county's exception for the Steel Bridge area. Our disposition of petitioners' first assignment of error makes it unnecessary for us to consider further the issues raised with respect to the Steel Bridge exception.

■ Petitioners next contend that LCDC erred in approving the county's goal exception for the Shaw Square area. The exception permits rural residential development in an area where Goal 3 (Agricultural Lands) would otherwise apply to keep the land in agricultural use.

Before we address this issue directly, a brief explanation of the "exceptions" process is in order. As a general rule, the "resource" goals[4] like Goal 3 and Goal 4 (Forest Lands) *must* be applied to lands that fit within pertinent goal definitions, *e.g.,* "agricultural land" and "forest lands." However, in order to avoid excessive rigidity in the land use planning process and to achieve rational planning results for areas where it is impossible or undesirable to apply the resource goals, LCDC devised an "exceptions" process. The pertinent language appears in Goal 2 (Land Use Planning), Part II:

> "When, during the application of the statewide goals to plans, it appears that it is not possible to apply the appropriate goal to specific properties or situations, then each proposed exception to a goal shall be set forth during the plan preparation phases and also specifically noted in the notices of public hearing. The notices of hearing shall summarize the issues in an understandable and meaningful manner.

> "If the exception to the goal is adopted [by the local government], then the compelling reasons and facts for that conclusion shall be completely set forth in the plan and shall include:

> "(a)   Why these other uses should be provided for;

> "(b)   What alternative locations within the area could be used for the proposed uses;

> "(c)   What are the long term environmental, economic, social and energy consequences to the locality, the region or the state from not applying the goal or permitting the alternative use.

> "(d)   A finding that the proposed uses will be compatible with other adjacent uses."

This provision makes consideration of factors (a) through (d) mandatory.

---

[4] "Resource" goals are the statewide planning goals whose purpose is to preserve various state resources, *e.g.,* Goal 3, which is intended to "preserve and maintain agricultural lands," and Goal 4, which is intended to "conserve forest lands for forest uses."

After the adoption of Goal 2, as LCDC gained experience in the application of the exceptions process, it apparently concluded that the Goal 2, Part II requirements were not well-suited for application to all types of land that, in the Commission's view, merited exceptions. The process seemed particularly ill-suited to land that was already developed in a manner inconsistent with otherwise applicable resource goals ("built" land) and land which, although not yet "built," was "irrevocably committed" to such development. As LCDC has explained in its brief "[I]f property is already committed to a non-resource use, it makes little sense to make findings as to why the use should be provided for or what are possible alternative locations for the use." LCDC therefore devised a second exceptions process that was codified into LCDC's administrative rules in July, 1982.[5] OAR 660-04-015(2) and 660-04-025. A local government seeking to take an exception under this alternative procedure is required to consider:

(a)  adjacent uses;

(b)  public facilities and services (water and sewer lines and the like);

(c)  parcel size and ownership patterns;

(d)  neighborhood and regional characteristics;

(e)  natural boundaries; and

(f)  other relevant factors.

If, after considering those factors, the local govenment concludes that the land in question is "built upon or irrevocably committed," the government may take an exception without considering the four factors listed in Goal 2, Part II.[6]

We turn again to the issue before us. All parties to this case concede that the county's exception for the "Shaw Square" area "was based on the 'built and committed' standard." Petitioners attack the exception on the ground, *inter*

---

[5] The alternative exceptions process was in use as early as 1975. *See 1000 Friends of Oregon v. Board of Commissioners of Marion County,* LCDC No. 75-006 (1975). The procedures were further explained in a 1979 LCDC policy paper and elaborately detailed by the Land Use Board of Appeals (LUBA) in *1000 Friends of Oregon v. Clackamas Cty,* 3 Or LUBA 281 (1981).

[6] The new LCDC rule, OAR 660-04-025(1), makes this clear:

"* * * If a conclusion that land is built upon or irrevocably committed is supported, the four factors in Goal 2 * * * need not be addressed."

*alia,* that the test in OAR 660-04-015(2) and 660-04-025 for "built or committed" exceptions does not comport with the requirements of Goal 2. We agree.

In *Willamette University v. LCDC,* 45 Or App 355, 608 P2d 1178 (1980), we held that LCDC could not repeal or amend a statewide planning goal through the exercise of its general rulemaking power. The issue in that case was the validity of an LCDC rule proclaiming lands within lawfully established city boundaries to be *per se* "urban" or "urbanizable" lands, as those terms are defined in the goals. The effect of the rule was to excuse local governments from the requirement that they apply and satisfy a five-part test in Goal 3 and a seven-part test in Goal 14 before converting "rural" land to "urbanizable" land. After a detailed discussion of the provisions and purposes of Goals 3 and 14, we said:

> "* * * [I]t is contrary to the purposes of Goals 3 and 14 to base the extent and timing of urban development on city boundaries that are not themselves based on the statewide planning goals.
>
> "LCDC, rather than this court, is the primary policy-maker in this field. *Norvell v. Portland Area LGBC,* 43 Or App 849, 604 P2d 896 (1979). *LCDC thus is entitled to amend the statewide planning goals* to embody the policy choice stated in OAR 661-01-305 [the disputed rule]. But as matters now stand, we find that OAR 660-01-305 is inconsistent with Goals 3 and 14.
>
> "Ordinarily, a conflict in an agency's regulations would raise the possibility that the latter is an implied repeal or amendment of the former. That possibility does not arise in this context. The legislature has delegated separate responsibilities to LCDC: first, and more specifically, to adopt the statewide planning goals, ORS 197.040(2)(a), 197.225; second and more generally, to 'promulgate rules,' ORS 197.040(1)(b). In this statutory scheme, the goals occupy a preferred position. There are, for example, special procedures required, over and above the general rulemaking procedures of the Administrative Procedures Act, for LCDC's adoption or revision of the statewide planning goals. ORS 197.235 to 197.245. From this scheme, we conclude the legislature did not intend that the statewide planning goals could be indirectly repealed or amended by any exercise by LCDC of its general rulemaking power." 45 Or App at 373-74. (Emphasis supplied.) *See also 1000 Friends v. LCDC,* 292 Or 735, 642 P2d 1158 (1982).

In this case, LCDC's "built or committed" exceptions policy excuses local governments from the consideration of factors made mandatory by Goal 2. It may therefore be regarded either as a partial repeal of Goal 2, Part II, or as an amendment to that provision. As *Willamette University v. LCDC, supra,* and the statutes governing goal adoption make clear, LCDC policy pronouncements of such magnitude must be promulgated in accordance with the procedural requirements for goal adoption. Because the "built or committed" exceptions process has not been promulgated as a goal amendment, it is not a lawful exceptions mechanism and challenged exceptions taken under it cannot stand.[7] LCDC erred by approving the county's exception for Shaw Square.

■ Petitioner FRG next complains that its objections to the county's acknowledgment request, which were timely filed with DLCD, were

"* * * not forwarded to the commission, reviewed by the commission, responded to by the commission in its findings supporting its acknowledgment order, or placed in the record of LCDC's proceedings."

According to FRG, these omissions constitute a material procedural error that impaired the fairness of the proceedings and the correctness of the agency's order, necessitating a remand under ORS 183.482(7).[8] LCDC counters with the following argument:

"* * * The objection which petitioners refer to * * * was reviewed by and responded to by the Commission as part of the City of Salem acknowledgment, which occurred on the same day as the Marion County acknowledgment review. * * *

"The reasons that the issues raised in petitioner FRG's objections were considered as part of the City of Salem's

---

[7] OAR 660-04-025 actually did not take effect until after LCDC had acknowledged Marion County's comprehensive plan. The county's exceptions were therefore taken in accordance with an LCDC policy that had not yet been expressed in rule form. The validity of the *rule* is thus not technically an issue in this case, but the permissibility of applying it is, in view of the parties' agreement that the rule was effectively applied by LCDC.

[8] That statute provides, in pertinent part:

"* * * The court shall remand the order for further agency action if it finds that either the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure."

acknowledgment review rather than Marion County's is that the objections relate to an area of the county which is outside the city limits of Salem, but inside the established urban growth boundary. * * * [T]he area which was included in the Marion County Acknowledgment request was 'outside of adopted or acknowledged urban growth boundaries.' * * *"

We note first that LCDC appears to misapprehend the identity of the FRG objections in issue. In April, 1982, FRG filed separate objection letters in response to acknowledgment requests for both the *Salem Area* Comprehensive Plan and the *Marion County* Comprehensive Plan. The objections to the *Salem Area* plan involved an area that "currently lies outside of the Salem city limits, but is proposed to be included within the Urban Growth Boundary." FRG is not now concerned with those objections. Instead, FRG contends that LCDC failed to consider the objections it raised with respect to the *Marion County* Comprehensive Plan. Some of the concerns raised in that objection letter do refer to land between the Salem city limits and the urban growth boundary, but others criticize the Marion County plan as a whole.[9] The latter objections could not have been properly addressed in the acknowledgment proceedings for the Salem Area plan.

Neither LCDC nor the county point to any other attempt by LCDC to address FRG's objections. We must therefore decide whether LCDC was *required* to respond to FRG's objections. The statutes do not say. OAR 660-03-025 appears to require the director of DLCD to respond to timely filed objections, but the rule specifically provides that "the

---

[9] Objections 2 and 3 are:

"2. The implementation measures are inadequate and in violation of Goal 2 because:

"a. The implementing ordinances do not contain plan amendment criteria;

"b. The standards relating to zone changes are inadequate, as described below, and are in violation of ORS 215.410(5); and

"c. The standards relating to the approval of conditional uses are inadequate, as described below, and in violation of ORS 215.416(5);

"3. The allowed conditional uses conflict with the zoning ordinance language and there is no clear implementation strategy between the plan, the applicable zone and the conditional use provisions, in violation of State-wide Planning Goal 2;

"* * * * *"

failure to respond to an objection which was timely filed shall not be grounds for invalidation of a Commission order * * *." Despite the language of that rule, we hold that LCDC must respond to properly raised objections and that the failure to do so is reversible error. The rationale for our decision lies in the statutory scheme for judicial review of LCDC orders. ORS 197.650(1) provides:

> "A commission order may be appealed to the Court of Appeals in the manner provided in ORS 183.482 [governing judicial review of orders in contested cases] by the following persons:

> "(a)   A person who submitted comments or objections pursuant to ORS 197.251(2) and is appealing a commission order issued under ORS 197.251;

> "* * * * *."

A petitioner seeking judicial review under the terms of this statute must base the arguments on the objections (or comments) filed with DLCD; those objections will therefore frame the issues on appeal. Unless we have the Commission's decisions on those issues before us, along with the bases for those decisions, we cannot perform the judicial review functions required by ORS 183.482. LCDC erred by failing to respond to FRG's objections to the Marion County Comprehensive Plan.[10]

Reversed and remanded.[11]

---

[10] Our holding simply extends to LCDC orders a rule that has long applied to the orders of other administrative agencies. *See, e.g., Wasson v. AFSD,* 59 Or App 634, 640 n 3, 652 P2d 358 (1982); *Graham v. OLCC,* 20 Or App 97, 104, 530 P2d 858 (1975).

[11] Petitioners' remaining assignment of error does not require discussion.