Argued and submitted February 25, affirmed in part, reversed in part
and remanded August 10, reconsideration denied December 9, 1983,
petition for review denied January 17, 1984 (296 Or 350)

## 1000 FRIENDS OF OREGON,
*Petitioner,*

*v.*

## MARION COUNTY et al,
*Respondents.*

(CA A25075)

668 P2d 412

Robert E. Stacey, Jr., Portland, argued the cause and filed
the briefs for petitioner.

Robert C. Cannon, Marion County Counsel, Salem, argued the caused and filed the brief for respondent Marion County.

Mary J. Deits, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development Commission. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner seeks judicial review of an order of the Land Conservation and Development Commission (LCDC or the Commission) acknowledging the Marion County Comprehensive Plan to be in compliance with the statewide land use planning goals. For reasons fully explained in a companion case, *Marion County v. Federation for Sound Planning,* 64 Or App 226, 668 P2d 406 (1983), we reverse the order and remand the case to LCDC for further consideration. There are, however, several issues raised by this case that are not resolved by our opinion in *Marion County v. Federation for Sound Planning, supra.* With respect to these issues, which involve minimum lot sizes in agricultural zones, exceptions taken under LCDC's "built or committed" exceptions process and uses permitted in rural areas, we affirm in part, reverse in part and remand.

The history of Marion County's attempt to obtain acknowledgment of its comprehensive plan is set forth in *Marion County v. Federation for Sound Planning, supra.* There is no need to repeat it here. We do note, however, that petitioner filed timely objections with the Department of Land Conservation and Development (DLCD). ORS 197.251(2); OAR 660-03-020. LCDC acknowledged the plan despite petitioner's concerns; this appeal followed.

Petitioner first claims that LCDC erroneously interpeted and applied Goal 3 (Agricultural Lands) by approving size standards in the county zoning ordinance that governs minimum lot sizes in agricultural zones.

The ordinance in question, MCZO 136.070, states:

"(1)  *Any proposed parcel* intended for farm use *must be appropriate to the continuation of the existing commercial agricultural enterprise of the particular area* based on the evaluation prescribed in 136.040(g). The evaluation shall include the subject property and commercial agricultural enterprises located in the same zone within one-half mile of the subject property.

"(2)  *The parcel shall meet the requirements of ORS 215.243.*

"(3)  New parcels intended for farm use shall generally be larger than the guidelines in (4) below. *Proposed farm parcels smaller than the applicable guidelines must be shown to be*

*appropriate for commercial agricultural enterprises more intensive than the typical commercial farms in the vicinity.* In addition, a site development and management program for the proposed commercial farm use shall be provided. The County may request an evaluation of the evidence and the management program by an Agricultural Specialist to determine if the proposed farm parcel meets the criteria in (1) and (2) above. Reasonable commitments may also be required to ensure that a good faith effort is made to implement the management program.

"(4)   Parcel size guideline: Parcels intended for farm use shall generally be: 40 acres or more in area if predominantly Class I soils; 60 acres or more if predominantly Class II and III soils; 80 acres or more if predominantly Class IV soil; and 100 acres if predominantly Class V-VIII soils." (Emphasis supplied.)

■   Petitioner contends that the third paragraph of the ordinance violates Goal 3[1] by allowing the creation of parcels too small for "the continuation of the existing commercial agricultural enterprise with[in] the area." Goal 3; OAR 660-15-000(3). Petitioner points out, correctly, that the language just quoted from Goal 3 is intended in part to ensure that the state's existing agricultural economic structures remain stable. *See* ORS 215.243; OAR 660-05-015. In order for economic stability to endure, farmlands that supply existing food processing plants and other farm-related industries must produce crops that are large enough to make the industrial operations profitable.

As petitioner construes the ordinance, an individual in Marion County could request a partition producing a parcel smaller than the minimum lot size recommended in paragraph (4), with the claim that he intends to devote that parcel to a new agricultural use that is hypothetically "more intensive" than the "typical" uses in the area. He could then develop a

---

[1] Goal 3 provides, in pertinent part:

"*GOAL:*   To preserve and maintain agricultural lands.

"Agricultural lands shall be preserved and maintained for farm use, consistent with existing and future needs for agricultural products, forest and open space. These lands shall be inventoried and preserved by adopting exclusive farm use zones pursuant to ORS Chapter 215. *Such minimum lot sizes as are utilized for any farm use zones shall be appropriate for the continuation of the existing commercial agricultural enterprise with[in] the area.*" (Emphasis supplied.)

"theoretical" site development and management program for the parcel, obtain approval for the partition, fail at the new enterprise and then have on his hands a parcel of land too small for any other agricultural endeavor. After this scenario has repeated itself with a number of different individuals and parcels, the agricultural land base in the area will have shrunken to the point where it can no longer support the locality's agricultural industries.

The Marion County ordinance, as we read it, would not allow such a chain of events. Paragraph (1) of the ordinance states that any proposed parcel division "must be appropriate to the continuation of the existing commercial enterprise of the particular area * * *." This language is virtually identical to the language of Goal 3, making a part of the ordinance the very goal requirement that petitioner says the ordinance violates. Paragraph (2) requires that each parcel "meet the requirements of ORS 215.243." That statute declares the agricultural land use policy of the state, which includes the preservation of agricultural land in blocks large enough to maintain the state's agricultural economy.[2] Paragraph (3) requires that a farm use parcel meet the minimum lot size standard set forth in paragraph (4), *unless* the proponent of the division can show that the proposed parcel is "appropriate for commercial agricultural enterprises more intensive than the typical commercial farms in the vicinity." The remainder of that paragraph requires a site development and management program for each parcel smaller than the recommended size and empowers the county to take additional steps to ensure that "the proposed farm parcel meets the criteria in (1) and (2) above."

---

[2] That statute provides:

"The Legislative Assembly finds and declares that:

"(1)   Open land used for agricultural use is an efficient means of conserving natural resources that constitute an important physical, social, aesthetic and economic asset to all of the people of this state, whether living in rural, urban or metropolitan areas of the state.

"(2)   The preservation of a maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources and the preservation of such land in large blocks is necessary in maintaining the agricultural economy of the state and for the assurance of adequate, healthful and nutritious food for the people of this state and nation.

"* * * * *"

The requirements of paragraphs (1), (2) and (3) must be applied, and therefore construed, together. In context, the ordinance language that petitioner challenges simply means that a parcel smaller than the guidelines in paragraph (4)[3] must be suitable for a type of agriculture that *already exists* in the area (*see* paragraph (1)) but is a more intensive agricultural use than is employed on the "typical" commercial farm. If the ordinance is interpreted in this manner, it can be applied to allow lots smaller than the size recommended in paragraph (4) without violating Goal 3.

For example, suppose that most of the land in the area of Farmer A's property is in grass seed production, which requires a parcel of at least 80 acres. There are, however, also several parcels devoted to tulip production, an endeavor that requires only 20 acres. Farmer A owns 100 acres of Class IV soil that is currently in grass seed. The guideline minimum lot size for Class IV soil is 80 acres. Farmer B wishes to purchase 20 acres from Farmer A in order to start a tulip farm. Division of the land would create a parcel for Farmer B smaller than the recommended minimum size, but the division would not violate Goal 3's requirement that the new parcel be "appropriate for the continuation of the existing agricultural enterprise with[in] the area." Although some "typical commercial farms" in the vicinity are grass seed farms, requiring 80 acres, tulip farming is also an established part of the "existing commercial agricultural enterprise" in the area. It is a "more intensive" agricultural use than grass seed farming and, as such, forms the basis for creation of a smaller parcel. If Farmer B can show that the 20 acres he seeks to purchase are "appropriate" for tulip cultivation and provides the county with a "site development and management program" for the land, the county can approve the partition without violating the requirements of Goal 3 and paragraphs (1) and (2) of MCZO 136.070. LCDC did not err in finding that the ordinance complies with Goal 3.

■ Petitioner next contends that LCDC erred by

"* * * issuing a compliance acknowledgment order for a plan containing goal violations on the ground that the violations were 'de minimus.' "

---

[3] We assume that the guideline sizes will be based on the amount of land needed for "typical" agriculture enterprises in the area.

We agree, for reasons fully explained in *Marion County v. Federation for Sound Planning, supra,* where petitioners raised an identical argument. *See* 64 Or App at 228-232.

■     Petitioner's next seven assignments attack LCDC's approval of the county's decision to take goal exceptions for seven separate areas. The exceptions were based on the county's determination that those areas are "built upon or irrevocably committed to" urban use. In *Marion County v. Federation for Sound Planning, supra,* 64 Or App at 232-234, we explain the "built or committed" exception and invalidate that exception procedure, because it is inconsistent with the requirements of Goal 2, Part II. Our holding in that case makes it unnecessary for us to consider the merits of assignments 3 through 9; because the exceptions were taken under an invalid procedure, they cannot stand.[4] LCDC erred by approving the county's exceptions for the Ankeny Interchange, the Talbot Interchange, the "Sunnyside-Delaney" Interchange, Phases IV and V of the Chinook Subdivision, the proposed White Cloud and Drury subdivisions and the State Street area.

Petitioner's tenth assignment states:

> "LCDC erroneously concluded that rural land, purportedly committed to nonagricultural uses, may be used for industrial or commercial development."

This assignment refers to LCDC's approval of zoning designations that authorize certain industrial uses in the State Street and interchange areas for which the county took "built or committed" exceptions. Because those exceptions are invalid, LCDC and the county must now reconsider each exception area. Reconsideration may well include rezoning. Our invalidation of the exceptions moots all issues arising from the zoning of the exception areas.

Finally, petitioner contends that LCDC erred in approving the county's exception to Goal 4 (Forest Lands) for the Steel Bridge area. Petitioner in *Marion County v. Federation for Sound Planning, supra,* makes a similar argument, and we dispose of the issue in that case. *See* 64 Or App at 231 n 3.

---

[4] Petitioner in this case does not argue that the "built or committed" exceptions process is itself invalid. However, our contemporaneous disposition of the two challenges to LCDC's acknowledgment of the Marion County plan compels us to treat challenges to "built or committed" exceptions in the two cases in the same manner.

In summary, we hold that (1) LCDC did not err by approving MCZO 136.070 as in accordance with Goal 3, (2) LCDC erred by acknowledging the Marion County Comprehensive Plan despite possible goal violations, (3) LCDC erred by approving exceptions taken by the county under the invalid "built upon or irrevocably committed" exceptions process for the Ankeny Interchange, the Talbot Interchange, the "Sunnyside-Delaney" Interchange, Phases IV and V of the Chinook Subdivision, the proposed White Cloud and Drury subdivisions, and the State Street area and (4) our invalidation of the "built or committed" exceptions moots all issues arising from the zoning of such areas.

Affirmed in part; reversed and remanded in part.