In the Matter of Clackamas County's
Comprehensive Plan and Implementing Measures.

PRENTICE et al,
*Petitioners,*

*v.*

LAND CONSERVATION AND
DEVELOPMENT COMMISSION,
*Respondent.*

(83-ACK-14 (Amended); CA A28429)

692 P2d 642

Vincent Salvi, Portland, argued the cause and filed the brief for petitioners.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, James Mountain, Jr., Solicitor General, and Michael Huston, Assistant Attorney General, Salem.

Michael E. Judd, Assistant County Counsel, Oregon City, filed a brief amicus curiae for Clackamas County.

Garry P. McMurry and Rankin, McMurry, VavRosky & Doherty, Portland, filed a brief amicus curiae for Carl M. Halvorson and John Smeed.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioners seek judicial review of an order of the Land Conservation and Development Commission (LCDC) acknowledging that Clackamas County's Comprehensive Plan and land use regulations comply with statewide planning goals. They contend that the acknowledgment was based on the commission's application of a "substantial compliance" standard specifically disapproved in *Marion County v. Federation for Sound Planning,* 64 Or App 226, 668 P2d 406 (1983), and that its approval of an exception to Goal 3 for Area 2 is not supported by substantial evidence. We agree with the latter contention and reverse and remand for further proceedings.

The commission reviewed Clackamas County's request for acknowledgment of its comprehensive plan on four separate occasions: December 4, 1980, October 30, 1981, December 11, 1981, and December 21, 1981. In October, 1981, the commission acknowledged the county's plan for its northwest urban area but excluded other challenged areas, including Area 2. In December, 1980, and December, 1981, the commission again continued the acknowledgment, finding that the county's plan and land use regulations did not comply with statewide goals, partially because the county had not stated compelling reasons for granting an exception to Goal 3 for Area 2. Subsequently, the county held additional hearings on the unacknowledged areas, accepted further testimony and evidence, and adopted new findings. On December 7, 1982, the Department of Land Conservation and Development issued a staff report recommending against acceptance of the county's exception for Area 2. On December 21, 1982, however, the commission voted to acknowledge the remaining portions of the Clackamas County plan, adopting the county's May, 1982, findings with respect to the Area 2 exception. On January 27, 1983, the commission moved to reconsider its decision with respect to Area 2, but on March 10, 1983, again concluded that the exception of Area 2 complied with statewide planning goals.[1] This petition for judicial review followed.

In its final order, the commission stated, in pertinent part:

---

[1] Reconsideration of LCDC's decision to except Area 2 was postponed until its March 10-11, 1983, meeting, to allow for the notification of interested persons.

"5. On March 10, 1983, the Commission completed its reconsideration of Exception Areas 1 and 2 and as to those exception areas for which the Department did not recommend acknowledgment, Areas 1, 2, 5 (Clock property only) and 13, the Commission's conclusion is that Areas 1 and 2 are acknowledged to be in compliance with the Statewide Planning Goals and that Area 5 (Clock property only) and Area 13, Carmel Estates, are not in compliance. (*See,* Continuance Order 83-CONT-15, Exhibit G). Goal 2 exceptions were properly taken for Areas 1 and 2, and those exceptions are justified for the reasons stated in Clackamas County's findings (Exhibit H) which are hereby adopted as the Commission's findings for those areas.

"The Commission recognizes that the Department reaches a different conclusion as to Areas 1 and 2, but a majority of the Commission feels that Clackamas County has adequately justified the exceptions for those areas. It should be noted that these two areas comprise less than 1/20 of 1 percent of the land in Clackamas County. While there will always be room for disagreement in making the 'judgment call' whether an exception has been adequately justified, *the Commission finds that in view of the complexities involved, the extent of good-faith planning, the findings, reasons and supporting information provided by the County,* the positive achievements of the plan in resource protection, *and particularly the relatively small amount of land at issue, the plan as a whole complies with the Goals* and acknowledgment, except as provided for in Continuance Order 83-CONT-15, is warranted." (Emphasis supplied.)

■ Petitioners contend that the above-emphasized language evidences that the commission applied a "substantial compliance" standard to the acknowledgment request, in contravention of our holding in *Marion County v. Federation for Sound Planning, supra.* In that case, we concluded that LCDC had no statutory authority to acknowledge plans which do not comply fully with all applicable goals. Because the commission's final order conceded that there were goal violations of a "*de minimis* nature," offered statutory justification for approving the plan in spite of the discrepancies and admonished other jurisdictions not to apply the standards approved therein, we concluded that the commission made a conscious decision to acknowledge a plan containing goal

violations. Accordingly, we reversed and remanded the order of acknowledgment.

Although portions of the emphasized language in the order challenged here mirror portions of the order invalidated in *Federation for Sound Planning,* there are essential differences between the two cases. Most notably, the present order lacks all of the telltale signs identified in the earlier case as evidencing a conscious decision to disregard goal violations. Because the commission unequivocally stated that the exceptions granted complied with statewide goals, the language that follows may be read reasonably as an explanation of why the commission viewed its rejection of the staff's recommendation as acceptable. Without further evidence that the commission approved the plan in the face of known deficiencies, we will not speculate that a substantial compliance standard was employed.[2]

■  Petitioners' next contention is that the county's findings, adopted by the commission in approving an exception to Goal 3[3] for Area 2, are not supported by substantial evidence. The county sought approval of the exception pursuant to Goal 2, Part II and *former* OAR 660-04-025, which

---

[2] ORS 197.251 was amended in part by the 1983 legislature to amend the statute we construed in *Marion County v. Federation for Sound Planning, supra.* That statute now provides, in pertinent part:

"(6) A commission order granting acknowledgment shall be limited to an identifiable geographic area described in the order if:

"(a) Only the identified geographic area is the subject of the acknowledgment request; or

"(b) Specific geographic areas do not comply with the goals, and the goal requirements are not technical or minor in nature."

ORS 197.747 provides:

"For the purposes of acknowledgment under ORS 197.251 and periodic review under ORS 197.640 and 197.641 to 197.647, 'compliance with the goals' means the comprehensive plan and regulations, on the whole, conform with the purposes of the goals and any failure to meet individual goal requirements is technical or minor in nature."

Those statutes took effect August 9, 1983, after the commission's issuance of its final order in this case.

Because we conclude that the acknowledgment order was not based on the application of a "substantial compliance" standard, we need not evaluate whether the order would currently be authorized under ORS 197.251. *See 1000 Friends of Oregon v. LCDC,* 69 Or App 717, 688 P2d 103 (1984).

[3] The stated purpose of Goal 3 is "to preserve and maintain agricultural lands."

authorized an exception to Goal 3 for lands that are "irrevocably committed" to nonagricultural uses. After the commission's acknowledgment order in this case, we held that the "irrevocably committed" exception procedure outlined in OAR 660-04-025 was invalid, because it permitted exceptions that did not comply with the criteria of Goal 2, Part II. *Marion County v. Federation for Sound Planning, supra.* One day before our decision in *Federation for Sound Planning,* however, the legislature codified the "irrevocably committed" exception, Or Laws 1983, ch 827, § 19a (now ORS 197.732). Subsequently, LCDC amended Goal 2, Part II, and promulgated new rules pursuant to ORS 197.732. *See* OAR 660-04-000 to 660-04-035. *Federation for Sound Planning,* would require that we reverse and remand the acknowledgment order here. However, in *1000 Friends of Oregon v. LCDC, supra,* n 2, 69 Or App at 720-21, we held that, because the new statutory criteria and rules are the functional equivalent of the former ones and would be applied on remand, an acknowledgment order which complies with the new statute, goals and rules should be affirmed, even though it may have been invalid under the law in effect at the time it was made. *See also Sommer v. Douglas County,* 70 Or App 465, 689 P2d 1000 (1984). Applying the new standards,[4] we conclude that some of

---

[4] ORS 197.732(1)(b) provides:

"(1) A local government may adopt an exception to a goal when:

"* * * * *

"(b) The land subject to the exception is irrevocably committed as described by commission rule to uses not allowed by the applicable goal because existing adjacent uses and other relevant factors make uses allowed by the applicable goal impracticable."

OAR 660-04-028 provides:

"(1) A local government may adopt an exception to a goal when the land subject to the exception is irrevocably committed to uses not allowed by the applicable goal because existing adjacent uses and other relevant factors make uses allowed by the applicable goal impracticable.

"(2) Whether land has been irrevocably committed will depend upon the situation at the specific site and the areas adjacent to it. The exact nature and extent of the areas found to be irrevocably committed shall be clearly set forth in the justification for the exception, and those area(s) must be shown on a map or otherwise described and keyed to the appropriate findings of fact. The findings of

the findings supporting the commission's acknowledgment of an exception for Area 2 were not based on substantial evidence and that, without those findings, the exception does not meet the applicable standards.

Area 2, the Pleasant Hill Planning Area, comprises 1,230 acres in the westerly portion of Clackamas County, bordered by Washington and Yamhill counties, west of I-5, south of Sherwood and northwest of Wilsonville. In the final

---

fact shall address the following factors:

"(a)  Existing adjacent uses;

"(b)  Public facilities and services (water and sewer lines, etc.);

"(c)  Parcel size and ownership patterns of the exception area and adjacent lands:

"(A)  Consideration of parcel size and ownership patterns under subsection (2)(c) of this rule shall include an analysis of how the existing development pattern came about and whether findings against the Goals were made at the time of partitioning or subdivision. Past land divisions made without application of the Goals do not in themselves demonstrate irrevocable commitment of the divided land. Only if existing development on the resulting parcels or other factors prevent their resource use or the resource use of nearby lands can the parcels be considered to be irrevocably committed. Resource and nonresource parcels created pursuant to the applicable goals shall not be used to justify a committed exception.

"(B)  Existing parcel sizes and their ownership shall be considered together in relation to the land's actual use. For example, several contiguous undeveloped parcels (including parcels separated only by a road or highway) under one ownership shall be considered only as one farm or forest operation. The mere fact that small parcels exist does not alone constitute irrevocable commitment. Small parcels in separate ownerships are more likely irrevocably committed if the parcels are developed, or clustered in a large group as opposed to standing alone or are not adjacent to or are buffered from designated resource land.

"(d)  Neighborhood and regional characteristics;

"(e)  Natural boundaries or other buffers separating the exception area from adjacent resource land;

"(f)  Physical development according to OAR 660-04-25; and

"(g)  Other relevant factors.

"(3)  A conclusion that land is irrevocably committed to uses not allowed by the applicable Goal shall be based on one or more of the factors listed in section (2) of this rule. The conclusion shall be supported by a statement of reasons explaining why the facts support the conclusion that it is impracticable to apply the Goal to the particular situation or area.

"(4)  Findings of fact and a statement of reasons that land subject to an exception is physically developed or irrevocably committed need not be prepared or adopted for individual parcels separately. Such units of land may be considered in combination as a single exception area. Lands which are determined to be irrevocably committed under section (2) of this rule can include lands physically developed without the additional findings required by OAR 660-04-025."

version of its comprehensive plan, Clackamas County concluded that Rock Creek and associated wooded areas provide a natural north-south boundary through the area and that land to the east of the boundary (46 percent of Area 2) is suitable for agricultural use and should be zoned EFU-20, but that land to the west of the boundary (54 percent of Area 2) is "irrevocably committed" to nonfarm uses and should be excepted from Goal 3. LCDC and *amici curiae* argue that the county's findings and conclusions support an irrevocably committed exception for the westerly portion of Area 2, because: (1) the characteristics of the land in that region are such that it has not been and cannot be farmed profitably, and (2) the adjacent property has been extensively divided and developed for rural residential use, which conflicts with normal farming practices. Petitioners challenge both the relevancy of and evidentiary support for the county's specific findings of fact relating to each of the proffered justifications for the exception.

First, petitioners challenge the county's findings that the record is devoid of testimony that adjacent land owners have commercially farmed or sharecropped their property and obtained a money profit, citing various excerpts from letters of adjacent property owners supporting the contrary conclusion. *Amicus* Clackamas County concedes that the finding may be in error, and LCDC does not specifically address that contention. Although *amici* Halvorson and Smeed may be correct in contending that the county may have applied its own definition of "commercial farming"[5] in finding that the land had not

---

[5] As stated in *1000 Friends of Oregon v. Douglas County,* 4 Or LUBA 24, 32 (1981):

"\* \* \* [A] determination of a commitment to non-farm use depends upon a showing that a person or persons could not reasonably be expected to manage a given area of agricultural land for agricultural, horticultural or animal husbandry purposes and derive a gross income therefrom in an amount reasonably determined to be appropriate by the local governing body. \* \* \*"

Consistent with that ruling, the county adopted the following definition for "commercial farm" in its comprehensive plan:

"A farm unit with all of the following characteristics:

"(a) The land is used for the primary purpose of obtaining a profit in money from activities described in sections 401.03(a) and (b) and 402.03(a) and (b).

"(b) The net income derived from the farm products is significant; and,

"(c) The products from the farm unit contribute significantly to the agricultural economy to agricultural processors and farm markets."

been profitably farmed, it cites no evidentiary support for the finding itself. We conclude that it is not supported by substantial evidence.

Secondly, petitioners contend that findings 14 to 16, which state that the only record of commercial farming in the disputed area shows that no gross profit has been derived from that use for a period of years, and finding 20, which states that the property has never been placed in the tax deferred green belt, do not support the conclusion that commercial farming is impracticable.[6] ORS 197.732(1)(b) provides that land is "irrevocably committed" when "existing adjacent uses and other relevant factors make uses allowed by the applicable goal *impracticable.*" (Emphasis supplied.) The land is agricultural land within the meaning of Goal 3. It is surrounded on three sides by land zoned EFU, with minor exceptions. There are no findings that the land could not qualify for tax-deferred status or explaining why it has not been placed in that status. Without more, the findings do not support the conclusion that agricultural use is impracticable.

Petitioners also challenge findings 26 to 28, which state that the soil of Area 2 is a thin, red clay with a low moisture holding capacity, that rock outcroppings make mechanized farming hazardous and that, because of steep slopes, the soil is subject to excessive erosion. They contend that those findings are irrelevant, because the soil within the exception area has been classified as falling within Goal 3's definition of agricultural land. LCDC argues that there are soil characteristics not reflected within the broad brush classification system that are relevant to determining whether agricultural use is impracticable. We agree that the findings are relevant. Nevertheless, because the previously discussed findings relating to the feasibility of farming Area 2 are either incomplete or not supported by substantial evidence, there is inadequate support for an exception to Goal 3 on the basis that the land has not been and cannot be profitably farmed.

Neither can the exception be upheld on the basis that

---

The term "significantly," however, is not separately defined. Because even the county itself concedes that the finding may be incorrect, we will not presume that the definition of "commercial farm" was employed in making it.

[6] LCDC's brief fails to address petitioners' specific contentions.

the extensive development and division of adjacent property conflicts with farming operations in Area 2. Although the county's findings document the history of parcelization of adjacent areas, they fail to consider whether findings with respect to the goals were made at the time of the partitioning or subdivision. OAR 660-04-028(2)(c)(A) specifically provides that "past land divisions made without application of the Goals do not in themselves demonstrate irrevocable commitment." Furthermore, the county's findings fail to demonstrate that existing development of adjacent parcels *prevents* the resource use of the excepted area, as required by OAR 660-04-028(2)(c)(A).

Petitioners' next contention is that findings 18 and 22 are not supported by substantial evidence. Finding 18 states that "factors such as vandalism of farm equipment, harassment of livestock, pilferage of crops or complaints about herbicides and pesticides are problems that severely impede the agricultural use of the land." Finding 22 states that, because of adjacent residences and roads surrounding the property, the risk of fire makes it impossible to use the land for forestry purposes. LCDC's response is that references to the evidence in support of those findings are made in the findings themselves. They are not, and we will not independently search the record to determine whether the findings are supported by substantial evidence. Although there are some small homesites adjacent to or near the property, the findings do not cite any examples of interference with farm or forest uses from the adjacent development. Accordingly, the findings that were made are more in the nature of conclusions, unsupported by findings. In any event, the considerations with which those findings deal are, at best, make-weights. As we said in *1000 Friends of Oregon v. LCDC, supra,* n 2, although problems such as spray drift, field burning smoke and plowing dust may be a factor in showing that agricultural use is impractical, they are not conclusive. Rather, "people who build houses in an agricultural area must expect some discomforts to accompany the perceived advantages of a rural location." 69 Or App at 728.

■    LCDC concluded that the effect of residential building makes commercial farm or forestry use incompatible with nearby homes, because:

" 'Houses next door (to any commercial farm) means *[sic]* complaints about odors, noise, spraying and dust. They mean higher taxes, as well as motorcycles, and kids and dogs chasing farm animals.' " (Quoting 1000 Friends of Oregon Newsletter (Fall, 1981)).

Whether that conclusion is based on the quoted newsletter or the findings quoted above, the factors cited are a consequence of rural life and are not sufficient to justify an irrevocable commitment exception based on rural residential development. *1000 Friends of Oregon v. LCDC, supra,* n 2, 69 Or App at 727-28.

■     Although it is not required that incompatibility be established only by ill-fated farming operations, as LCDC fears, there must be substantial evidence that farming practices would be impeded by residential development beyond the fact of the development itself. Because the findings adopted by the commission fail to address these concerns, and because some of the findings are not supported by substantial evidence, they do not support an exception to Goal 3 for Area 2. The acknowledgment order must be reversed and remanded.

Reversed and remanded for reconsideration.