Argued and submitted October 19, 1984, affirmed March 6, reconsideration denied
April 19, petition for review denied August 8, 1985 (299 Or 584)

# 1000 FRIENDS OF OREGON,
*Petitioner,*

*v.*

# LAND CONSERVATION AND DEVELOPMENT
## COMMISSION et al,
*Respondents.*

## (84-ACK-032; CA A32239)
696 P2d 550

Richard P. Benner, Portland, argued the cause and filed the briefs for petitioner.

Michael B. Huston, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development Commission. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Michael A. Holstun, Assistant Attorney General, Salem.

Richard T. Ligon, Benton County Counsel, Corvallis, argued the cause and filed the brief for respondent Benton County.

William A. Van Vactor, County Counsel, Lane County Office of Legal Counsel, Eugene, filed a brief amicus curiae for Lane, Coos and Josephine Counties. With him on the brief were James H. Boldt, Josephine County Counsel, Grants Pass, and John K. Knight, Coos County Counsel, Coquille.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner appeals from the order of the Land Conservation and Development Commission (LCDC) acknowledging the Benton County comprehensive plan and land use regulations. Petitioner's first contention is that the "farmstead" provision in the county's ordinance pertaining to exclusive farm use (EFU) zones violates ORS 215.283 and, therefore, violates Goal 3 and that LCDC erred by concluding that the provision complies with the goal.

The farmstead provision allows retiring or retired farmers to partition a parcel that contains the family dwelling from the remainder of the farm property and to use the parcel for nonfarm residential purposes. The parcel cannot exceed five acres. It can be "only as large as necessary to accommodate the residential use" and "[n]o actively farmed land or major farm buildings are to be included within the farmstead parcel." The ordinance limits the right to apply for a farmstead partition to persons who have resided on the property for 30 years or more, requires the remainder of the property to be continued in farm use and forbids further partition of the property for farmstead purposes.

Petitioner argues that the farmstead provision violates ORS 215.283(3)(d), because it does not expressly require, as does that statute, that the dwelling be "situated upon generally unsuitable land for the production of farm crops and livestock." LCDC concluded:

"* * * Although the County does not specifically apply the criteria [of ORS 215.283(3)(d)], the County's own condition * * * is an equivalent provision. The requirement that the farmstead with the existing farm dwelling be only as large as necessary, a maximum of five acres and not include any land 'actively farmed' or any 'major farm buildings' will result in land only 'generally unsuitable for farm crops and livestock' being part of the partition."

Petitioner argues:

"Faulty reasoning has led respondent LCDC to a violation of the EFU statute. Respondent says: Of course these new parcels are unsuitable for farm use; you can't farm land covered by a house! Respondent has forgotten the dwellings being separated from farms in this process are *farm* dwellings, 'dwellings customarily provided in conjunction with farm

use.' ORS 215.283(1)(f). They are accessory to and necessary for farm use. The land under and immediately surrounding the farm dwelling is *part of the farm.* How can part of the farm be deemed unsuitable for farm use? After the 'farmstead' division, the farm has no farm dwelling.

"ORS 215.203(2)(a) defines 'farm use' to mean 'the current employment of land for the primary purpose of obtaining a profit in money * * *.' The EFU statute also defines 'current employment':

" ' "Current employment" ' of land for farm use includes:

" '* * * * *

" '(F) Land under dwellings customarily provided in conjunction with the farm use in an exclusive farm use zone * * *.'

"If the statute considers the land under a farm dwelling as currently employed in farm use, can LCDC write it off as unsuitable for farm use just because the land has a farm dwelling on it?" (Emphasis petitioner's.)

■ Although petitioner's understanding of the statutory scheme is colorable,[1] LCDC's is no less so. LCDC concluded that the requirements that the county's provision establishes for farmsteads will necessarily limit the land that can be used for farmsteads to land that satisfies the requirement of ORS 215.283(3)(d) and of Goal 3. In effect, that conclusion is an interpretation of the statutory and goal requirement. We do not find it to be erroneous. *See Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980).

■ Petitioner assigns five errors to LCDC's conclusion that the county's plan and ordinances comply with Goal 4. It argues first that Goal 4 prohibits *all* nonforest uses on forest lands and that the county's provisions relating to nonforest dwellings therefore violate the goal *ipso facto.* We rejected essentially the same contention in *Publishers Paper Co. v. Benton County,* 63 Or App 632, 665 P2d 357, *rev den* 295 Or 631 (1983). We decline petitioner's invitation to overrule that decision.

Petitioner's remaining Goal 4 arguments pertain to

---

[1] However, the county points out that the criterion of ORS 215.283(3)(d) is whether land is generally unsuitable *for the production of farm crops and livestock,* not whether it is unsuitable *for farm use.* Petitioner's argument emphasizes farm use.

the tests that the county applies for the allowance of nonforest dwellings on certain forest land and for the allowance of forest dwellings on forest parcels of specified minimum or sub-minimum sizes. The underlying dispute between petitioner and LCDC is over the degree of flexibility that the goal leaves LCDC in interpreting and applying it.[2] LCDC argues in its brief:

> "Based on the literal language and purpose of Goal 4, LCDC has consistently adhered to an important interpretive point regarding this goal — *i.e., compliance with Goal 4 is measured by the combined ability of all of the local government's forest planning and implementing measures to conserve forest lands for forest uses.*
>
> "* * * * *
>
> "To measure Goal 4 compliance, LCDC must consider not only the individual strength of each plan element, but also the cumulative strength of all elements. In one county, weak map designations of forest lands may be offset by strong zoning and implementation measures. In another county, weak zoning and implementation measures may be offset by a strong inventory and map designations. * * *" (Emphasis LCDC's.)

Petitioner states:

> "Such a fluid approach would be fine if Goal 4 said no more than: 'Conserve forest land for forest use.' But Goal 4 says more * * *. It says: 'Forest land *shall be retained for the production of wood fiber and other forest uses.*' (Emphasis added.) Then Goal 4 lists the 'forest uses' for which forest land must be retained. LCDC simply does not have the unbridled discretion it wants to exercise in applying Goal 4 from one

---

[2] Goal 4 provides, as material:

"**GOAL: To conserve forest lands for forest uses.**

"**Forest land shall be retained for the production of wood fiber and other forest uses. Lands suitable for forest uses shall be inventoried and designated as forest lands. Existing forest land uses shall be protected unless proposed changes are in conformance with the comprehensive plan.**

"* * * * *

"**Forest Uses** — are (1) the production of trees and the processing of forest products; (2) open space, buffers from noise, and visual separation of conflicting uses; (3) watershed protection and wildlife and fisheries habitat; (4) soil protection from wind and water; (5) maintenance of clean air and water; (6) outdoor recreational activities and related support services and wilderness values compatible with these uses; and (7) grazing land for livestock."

acknowledgment review to the next. Like other agencies, it must operate within the confines of its own rules. * * *"

 We do not agree that the goal allows *no* variation in local approaches or in LCDC compliance review criteria, and we do not agree with petitioner that the county's approach or the LCDC acknowledgment criteria as applied here violate the goal.[3]

 Petitioner argues both in connection with its farmstead provision and its Goal 4 assignments that LCDC's rulings are inconsistent with officially stated agency positions. ORS 183.482(8)(b)(B). Petitioner supports that argument, in the main, with citations to continuance and acknowledgment orders by LCDC in connection with its review of plans of other jurisdictions and with citations to LUBA orders on which LCDC made determinations pursuant to Oregon Laws 1979, chapter 772, section 6 (*repealed by* Oregon Laws 1983, chapter 827, section 59). We hold that an agency's conclusion in an adjudicative setting on an issue that can be decided differently in different factual contexts does not give rise to an inconsistency subject to ORS 183.482(8)(b)(B), at least when the disparity does not occur at different stages of the same proceeding or in separate proceedings that relate to the same event. *See 1000 Friends of Oregon v. Washington County,* 72 Or App 449, 696 P2d 554 (1985); *Assoc. of Engineering Employes v. Dept. of Trans.,* 72 Or App 371, 695 P2d 961 (1985); *compare* ORS 197.040(1)(c); *Coats v. LCDC,* 67 Or App 504, 679 P2d 898 (1984).

Petitioner's argument that the plan and regulations violate Goal 5 does not necessitate discussion.

Affirmed.

---

[3] We do not imply agreement or disagreement with the general Goal 4 compliance review methodology that LCDC describes in its brief.