Argued and submitted October 11, 1985, reversed and remanded with instructions
February 12, 1986

## 1000 FRIENDS OF OREGON et al
*Appellants - Cross-Respondents,*

*v.*

## LAND CONSERVATION AND DEVELOPMENT COMMISSION,
*Respondent,*

## POLK COUNTY,
*Respondent - Cross-Appellant.*

(126,792; CA A33638)

714 P2d 252

Robert E. Stacey, Jr., Portland, argued the cause and filed the briefs for appellant - cross-respondents.

Michael A. Holstun, Assistant Attorney General, Salem,

argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, Jeff Bennett and Philip Schradle, Assistant Attorneys General, Salem.

Michael F. Najewicz, Dallas, argued the cause and filed the brief for respondent - cross-appellant.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J

Petitioners appeal and Polk County cross-appeals from the trial court's[1] remand of LCDC's order acknowledging the county's comprehensive plan and land use regulations. For reasons of organization, we consider the cross-appeal first.

The county's first assignment is that the trial court erred by reversing LCDC's approval of a Goal 2 exception to permit "rural residential development" on 6,067 acres of resource land. The county argues, *inter alia,* in this context and others, that its planning process had evolved to an advanced stage and it had already submitted its plan and regulations for LCDC's review before LCDC and the courts had articulated standards and interpretations relating to the allowance of Goal 2 exceptions. The county states:

> "It is Polk County's position that it should be charged only with the state of the art present at the time it was developing its plan and during LCDC's acknowledgment review. Local governments and land use planners simply cannot speculate what new element to the test may be formulated by the Land Use Board of Appeals, Circuit Court or the Court of Appeals. County Commissioners and planning departments must deal with the state of the law and process as it exists at the time the plan is being formulated and reviewed by LCDC. Without such finality, the plan acknowledgment process would never end, leaving moot all post-acknowledgment review requirements. * * *"

Although the trial judge found the county's "state of the art" argument to have some merit, he rejected it and stated that, "[f]or the most part, I shall focus on the [March 25, 1981] date of the acknowledgment order as the important date." By coincidence, we had occasion to comment on a similar issue on the same day that the trial judge signed his "Opinion and Judgment." In *1000 Friends of Oregon v. LCDC,* 69 Or App 717, 720-21, 688 P2d 103 (1984), we concluded implicitly that we could affirm LCDC's acknowledgment of an exception taken before ORS 197.732 was enacted, if the exception complied with *either* the Goal 2 requirements that were in

---

[1] At the time appellants sought judicial review, acknowledgment orders were subject to review in circuit court under ORS 183.484. *See Oregon Business Planning Council v. LCDC,* 290 Or 741, 626 P2d 350 (1981). Such orders are now directly reviewable by this court under ORS 197.650.

effect at the time of the acknowledgment order *or* the later-adopted statutory and regulatory requirements that were in effect at the time of our review.[2] *See* ORS 197.732(9); *see also Sommer v. Douglas County,* 70 Or App 465, 689 P2d 1000 (1984).

■ We agree with the county's state of the art argument only to the extent that it coincides with our conclusion in the cited cases. We disagree with the county's apparent suggestion that its exception was subject to automatic approval simply because it was taken before Goal 2 had been *interpreted* as being specifically contrary to the county's application of it. The county does not demonstrate successfully that there was any court or agency interpretation or other authority at the time when it was engaged in its planning process or at the time of the acknowledgment order that affirmatively *supported* the exception for the 6,067 acres.

On the merits of the county's first assignment, we agree with the trial court's reasoning and conclusion that LCDC's approval of the exception was erroneous in March, 1981, and that it is also erroneous under current law.

■■ The county's remaining assignments and all of petitioners' assignments pertain to the compatibility with Goal 3 of certain zoning ordinance provisions relating to land divisions in the county's exclusive farm use (EFU) and Farm /Forest (F/F) zones. The county's second assignment challenges the court's conclusion that the ordinance's criteria for land divisions in the two zones do not satisfy the requirement of Goal 3 that "minimum lot sizes as are utilized for any farm use zones shall be appropriate for the continuation of the existing commercial agricultural enterprise with[in] the area." The county's third assignment is inscrutable and, like its others, offers no guidance to comprehension in the form of any citation to the record, let alone a quotation of any pertinent portion. However, the argument that the county makes in support of its third assignment is apparently the same in substance as the argument it makes for its second assignment.

---

[2] Part of the rationale for that conclusion was that, if the exception did not comply with the former criteria, compliance with the less stringent new standards under ORS 197.732 would nevertheless warrant affirmance, because the current standards would apply on remand. A reversal and remand based on noncompliance with the old standards would therefore be a useless act.

The county does not contend that the *ordinance provisions,* read alone, are consistent with the requirement of the goal. It argues that, notwithstanding that deficiency, a provision of its comprehensive plan does embody the goal standard and "overshadows the specific requirements of the Zoning Ordinance." Petitioners answer that the plan provision does not satisfy Goal 3 and that the ordinance as well as the plan must comply with the goal as a prerequisite to acknowledgment. We agree with the second part of petitioners' answer, *see Sommer v. Douglas County, supra,* and we therefore need not address the first to resolve the county's assignments. The county does not establish any error in its cross-appeal.

■ We turn to petitioners' appeal. They contend, first, that the trial court erred by sustaining LCDC's approval of the EFU and F/F ordinance provisions relating to the placement of dwellings on existing farm lots. Petitioners maintain that the provisions permit dwellings outright and do not make their placement contingent on county review for their effect on the appropriateness of the residual lots for the continuation of the existing commercial agricultural enterprise.[3] It appears to be agreed among the parties and LCDC that, at all relevant times, the pertinent requirement of the goal has been applicable to the placement of dwellings on existing lots as well as to land divisions. *See* OAR 660-05-025(1); LCDC Policy Paper, "Common Questions about Statewide Goal #3," 9-10. LCDC's response to petitioners' objection in the proceedings below, like its argument here, seems to us to be nonresponsive. The response was:

"* * * 1000 Friends objects that new farm dwellings in the

---

[3] Section 136.020(b) of the zoning ordinance provides, with respect to permitted uses in the EFU zone:

"No building, structure or land shall be used, and no building or structure shall be hereafter erected, structually altered, enlarged, or maintained, except for the following uses:

"(b) A single family dwelling, or mobile home subject to the provisions of Section 127.040(c)(2) of the Zoning Ordinance as amended, in conjunction with farm use (see Farm Use definition)."

Section 138.030, the F/F provision, states:

"Within the F/F Zone no building, structure, or land shall be used, and no building or structure shall be erected, structurally altered, enlarged, or maintained except for any use permitted outright in the exclusive farm use zone under Section 136.020 of the Polk County Zoning Ordinance."

EFU and F/F zones are allowed on existing lots without a showing that such lots are appropriate for the continuation of the commercial agricultural enterprise in the area. The EFU and F/F zones require that new dwellings must be in conjunction with a farm use."

LCDC notes in its brief that "[i]t is possible to interpret LCDC's short response to 1000 Friends in more than one way." However, it is *not* possible to interpret the response as having any bearing on the *goal* requirement, as distinct from the separate "in conjunction with farm use" requirement of ORS 215.283(1)(f). *See former* ORS 215.213. We are also not persuaded by LCDC's and the county's alternative arguments that LCDC did or could conclude that the challenged provisions, when read with other provisions of the ordinance, satisfy the goal's requirement. LCDC and the trial court erred.[4]

■ ■ Petitioners' next assignment is that the county's exemption of certain "homesteads" from the land division standards of the EFU and F/F zones violates ORS 215.283 and Goal 3. We disagree. *See 1000 Friends of Oregon v. LCDC,*

---

[4] The parties and LCDC base various arguments on *Byrd v. Stringer,* 295 Or 311, 666 P2d 1332 (1983). The court there held that, because Polk County's plan and regulations had been acknowledged *by LCDC,* LUBA erred by applying Goal 3 to the county land use decision in question there and that only the plan and regulations were applicable. Although there is *dicta* in *Byrd* that comments on Goal 3, the opinion states no authoritative interpretation of the goal that it held was inapplicable to the inquiry. Conversely, the issue here is whether LCDC erred by finding that the county's plan and regulations comply with the goal.

For reasons unrelated to the substantive merits of either case, this appeal may indicate that there is a problem with *Byrd's* general holding that the goals cease to be applicable to land use decisions by a planning jurisdiction after LCDC has acknowledged its plan and regulations. The more realistic point in time for the goals to become inapplicable may be after final judicial affirmance of an acknowledgment order or after the time for judicial review has passed without review being sought. *See Families for Resp. Govt. v. Marion Co.,* 65 Or App 8, 670 P2d 615, *rev den* 296 Or 237 (1983) (remanding appeal from county land use decision to LUBA for consideration of goal issues, because LCDC's acknowledgment of county's plan was reversed by Court of Appeals after LUBA decided appeal solely on basis of plan and regulations as acknowledged by LCDC).

LCDC argues at some length in response to petitioners' first assignment that it was correct in its approval of the ordinance provisions as they relate to smaller parcels used for labor-intensive commercial agricultural activities. Petitioners' assignment, however, is that the provisions are *facially* inconsistent with Goal 3 as they apply to existing parcels *generally.* The specific issue of dwellings on labor intensive parcels is for LCDC to consider on remand. Our discussion and disposition of petitioners' third assignment may have some bearing on LCDC's consideration of that issue.

72 Or App 443, 696 P2d 550, *rev den* 299 Or 584 (1985). However, one point petitioners make in connection with the assignment requires comment. They argue that one of the defects in the homestead exemption provision of the zoning ordinance is that it uses the word "should" rather than "shall" in defining the criteria for allowing an exemption. Polk County Zoning Ordinance, section 179.050. LCDC and the trial court construed "should" as being a mandatory term, and the county agrees. Petitioners express concern that, once the county's plan and regulations are acknowledged, it will become free to construe its ordinance differently from the construction that LCDC and the courts gave it in acknowledging it. Although that is true as an academic proposition, any decision the county makes pursuant to a revised interpretation is reviewable by either LUBA or LCDC and, in turn, the courts, none of which is likely to depart from our holding in this opinion that "should" is a mandatory word in the context of the ordinance provisions. *See Gordon v. Clackamas County,* 73 Or App 16, 698 P2d 49 (1985).[5]

■     The third assignment that petitioners make is that the court erroneously sustained LCDC's approval of the zoning ordinance provisions relating to land divisions for the creation of small parcels for labor-intensive farm activities.[6] Petitioners contend that the provisions violate Goal 3, because they do not restrict divisions to those that create "new small farms [of the] types * * * which are part of the

---

[5] We are perplexed by the county's failure to amend the ordinance during the seven-year period since it made its acknowledgment request, given the parties' consensual understanding that the unambiguous word "shall" is what the county meant or had to mean to comply with the statute. Although complaints by local governments about the duration of administrative and judicial review of local planning actions may have some justification, the review process is not shortened by local government failures like the one here to amend an ordinance to use a word that everyone agrees was the intended one.

[6] Section 136.030(c)(5) allows divisions in the EFU zone "for the purpose of establishing a labor intensive agricultural activity meeting the definition of Farm Use * * * in ORS 215.203." Section 138.100(e) permits a division in the F/F zone if:

"The division is for the purpose of establishing a labor intensive commercial farm use as defined in ORS 215.203 or a labor intensive commercial forest use. An applicant for a land division under this subsection must show: (i) the ability to establish a specific type of commercial scale labor intensive use using accepted farming practices as defined in ORS 215.203(2)(c); (ii) that the land to be divided is suited to the intended commercial scale labor intensive use; (iii) that all facilities necessary to carry out the intended commercial labor intensive use are available to the property or will be made available to the property."

'existing commercial agricultural enterprise'" in an area and also because, at least in the case of the EFU provision, there is no requirement that the division be for an intensive operation that is commercial in scale. Petitioners are correct. *See 1000 Friends of Oregon v. Marion County,* 64 Or App 218, 221-23, 668 P2d 412 (1983), *rev den* 296 Or 350 (1984). LCDC argues that the challenged sections of the ordinance comply with the Goal 3 requirement when they are read in conjunction with other sections of the plan and ordinance. We do not agree that LCDC's interpretation of the provisions salvages the challenged ones. In any event, the challenged provisions can be readily amended to achieve compliance, if LCDC's understanding of their intended meaning is correct. *See* note 5, *supra.*

■     Petitioners' remaining assignment attacks LCDC's and the trial court's approval of section 136.030(c)(4) of the zoning ordinance. Petitioners challenge that provision as violating the same Goal 3 requirement on which they rely in their other assignments. The section allows agricultural land divisions if:

> "The division is required to obtain construction financing for housing to be occupied by those engaged in the farming operation."

ORS 215.263(6) exempts land divisions in EFU zones from the general requirement of county governing body review and approval if they result

> "from lien foreclosures or divisions of land resulting from foreclosure of recorded contracts for the sale of real property."

Petitioners argue that,

> "given this exemption protecting the foreclosure rights of the lender in the case of default on a 'construction financing' loan, there is *no* justification for allowing a lot to be created as security for a loan in the absence of default — even if Goal 3 permitted a division on that ground." (Emphasis petitioners'.)

The county concedes the assignment. LCDC does not. It argues that, when other statutory and ordinance provisions are considered, "a strong argument is available that a division could never be 'required' under § 136.030(c)(4) * * *." We do not see why the fact that the section may not

accomplish an apparent purpose that is inconsistent with Goal 3 makes its inclusion in the zoning ordinance consistent with the goal, and we therefore agree with petitioners and the county.

On the appeal, reversed and remanded with instructions to remand to LCDC for reconsideration of compliance of the EFU and F/F zoning ordinance provisions with Goal 3; affirmed on the cross-appeal.