Argued and submitted October 15, reversed and remanded November 19, 1986,
reconsideration denied January 16, petition for review denied March 17, 1987
(303 Or 74)

DOUGHTON,
*Petitioner,*

*v.*

DOUGLAS COUNTY et al,
*Respondents.*

(LUBA 86-015; CA A41209)

728 P2d 887

Robert L. Liberty, Portland, argued the cause and filed the brief for petitioner.

Paul G. Nolte, Douglas County Counsel, Roseburg, argued the cause and filed the brief for respondent Douglas County.

No appearance for respondents James Clendenin and Thomas Orlando.

Dave Frohnmayer, Attorney General, William F. Gary,

Deputy Attorney General, Virginia L. Linder, Solicitor General, and David G. Ellis, Assistant Attorney General, Salem, filed a brief for agency-intervenor Department of Land Conservation and Development.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner seeks review of LUBA's dismissal of his appeal from Douglas County's issuance of a building permit to respondent Orlando for a single family dwelling on a parcel in an exclusive farm use (EFU) zone.[1] LUBA concluded that the county's action comes within ORS 197.015(10)(b), which provides that a "ministerial decision * * * made under clear and objective standards contained in an acknowledged comprehensive plan or land use regulation and for which no right to a hearing is provided by the local government" is not a "land use decision" subject to LUBA's jurisdiction.[2] Petitioner and intervenor LCDC disagree with LUBA's conclusion. We also disagree with it, and we reverse and remand.

The permit was issued pursuant to section 3.4.050(4) of the county's Land Use and Development Ordinance, which allows as a permitted use in the zone:

"One single-family dwelling and other buildings and accessory uses customarily provided in conjunction with farm use on a property meeting the minimum requirements of Sec. 3.4.200."[3]

Section 3.4.200 relates to "property development standards" and, generally, it sets forth precise formulas for parcel sizes, setbacks and the like. Section 3.4.200 does not address how to determine whether a dwelling is "customarily provided in conjunction with farm use."

LUBA stated early in its analysis of the jurisdictional issue:

"* * * ORS 197.015(10)(b) does not categorically bar our review of *all* building permit actions. Where action on a building permit is not subject to 'clear and objective standards,' or where a hearing on the permit is provided for at the local level, we assume the action can be a reviewable land use decision." (Emphasis in original.)

We agree with that statement, *see Bell v. Klamath Co.,* 77 Or

---

[1] Respondent Clendenin sold the property to Orlando.

[2] The parties agree that the county's plan and regulations are acknowledged and that the county provided no hearing rights in connection with the permit application.

[3] As relevant here, the ordinance provision essentially duplicates ORS 215.283(1)(f).

App 131, 711 P2d 209 (1985), and so do petitioner and LCDC. The difficulty, according to them, is that LUBA did not correctly identify *which* county decision had to be subject to clear and objective standards in order for ORS 197.015(10)(b) to apply. In petitioner's and LCDC's view, the critical question was whether the proposed dwelling was one customarily provided in conjunction with farm use, and the ordinance does not contain clear and objective standards for answering the question.

LUBA agreed that the ordinance contains no standards pertaining to that question, but it did not agree that that was the determinative question. It explained:

> "Respondent Orlando sought approval of a 'dwelling customarily provided in conjunction with farm use.' Section 3.4.050(4) of the county ordinance classifies such a use as 'permitted' in the * * * Zone. Under that section, conformance with [the section 3.4.200] 'property development standards' is required. These standards concern minimum lot size, lot coverage, building setbacks, building height and parking. The standards, which we quote in a footnote, are stated in objective terms (with one exception not applicable to this permit). Conformance with these standards can be determined mathematically. * * *

> "There remains a question about whether the permit decision can be considered ministerial under ORS 197.015(10)(b). The question arises because of the difficulties in * * * classifying a proposed dwelling as one that is 'customarily provided in conjunction with farm use.'

> "Petitioner correctly states that the application could not automatically be approved based on the farm use zoning of the property. Recent cases have held that the application for a farm-related dwelling must demonstrate that the property is currently in farm use; *Matteo v. Polk County*, 11 Or LUBA 259, *aff'd; Polk County [et al] v. Matteo [et al]*, 70 Or App 179, [687 P2d 820] (1984), and that this type of farm use is customarily combined with a residence. *Matteo v. Polk County*, [14 Or LUBA 67 (1985)]. These inquiries require factfinding. They may also present more complex questions of fact and law than arise in most building permit cases. * * *

> "The inquiries required where a building permit for a farm related dwelling is proposed may involve factfinding and interpretation of law by permit officials, but the question here is whether these inquiries are 'standards' as that term is used

in ORS 197.015(10)(b). As explained below, we answer this question in the negative. Since the only standards governing the permit are the objective 'property development standards' in Section 3.4.200 of the ordinance, we hold that the challenged decision was a

> " 'ministerial decision of a local government made under clear and objective standards [the property development standards in Section 3.4.200] * * *.'

"We believe the distinction the legislature intended by using the phrase 'clear and objective standards' in ORS 197.015(10)(b) is between objectively measurable requirements (e.g. lot size, setbacks, height limits, etc.) and more open ended measures of a use's desirability (e.g. compatibility with adjacent uses, consistency with broadly worded plan policies, etc.). The former are classifiable as objective standards; the latter are classifiable as subjective standards because of their broad scope and the room they allow for the exercise of discretion. The inquiries required in determining whether a proposed farm-dwelling should be so classified in light of the *Matteo* decisions, *supra*, by contrast, do not involve standards in the sense that term is used in ORS 197.015(10)(b). Rather, they concern the threshold question of how to classify the proposal under the zoning ordinance so as to determine *which* 'standards' govern its approval. * * *

"The permit official's decision to classify the proposal as a permitted use under Section 3.4.050(4) of the ordinance did not entail the application of 'standards' as the term is used in ORS 197.015(10)(b). Since the standards governing establishment of the dwelling (Section 3.4.200) are 'clear and objective' * * * we believe the determination is ministerial. * * *" (Footnote omitted; emphasis in original.)

We are unable to agree. The crux of our problem with LUBA's analysis is that two questions, rather than only one—whether the proposed dwelling met the section 3.4.200 standards *and* whether it was one "customarily provided in conjunction with farm use" — were involved in the county's decision. We are not persuaded by LUBA's characterization of the latter question as involving a mere "classification" of the permit application, preliminary to the decision to approve or disapprove it; that classification was *part* of the decision. Both questions had to be answered affirmatively for the permit to be approved and, for ORS 197.015(10)(b) to apply, both questions had to be answerable by reference to clear and objective standards. LUBA was correct in concluding that

section 3.4.200 provides clear and objective property development standards. For reasons we will discuss, LUBA was also correct in its conclusion that, under section 3.4.050(4), the determination of whether the dwelling was customarily provided in conjunction with farm use "*did not* entail the application of 'standards.'" (Emphasis supplied.) However, LUBA was not correct in its understanding that that determination does not *have* to entail the application of clear and objective standards for the county's decision to come within ORS 197.015(10)(b).

We turn to whether there were clear and objective standards pertaining to the determination. Section 3.4.050(4) contains no standards. It simply states a requirement, without articulating criteria for deciding when, whether and how the requirement is satisfied. More fundamentally, the question is inherently not susceptible to a clear and objective ministerial resolution. LUBA's *Matteo* decisions, discussed in LUBA's opinion, *supra,* make clear that, for a dwelling on EFU land to be a customary conjunct of farm use, there must be a factual demonstration that the land is used as well as zoned for farm purposes, and there must be a showing that the "type of farm use is customarily combined with a residence."[4]

The purpose of ORS 197.015(10)(b) is to make certain local government actions unreviewable as land use decisions, because they are really nondiscretionary or minimally discretionary applications of established criteria rather than decisions over which any significant factual or legal judgment may be exercised. If particular decisions can automatically follow from the existence of general standards which are unaffected by factual variables, the decisions are within the statute's scope. For example, the statute would apply here *if all* proposed dwellings on EFU parcels where no existing dwellings are located were *necessarily or categorically* ones which are customarily provided in conjunction with farm use. However,

---

[4] Although we have not addressed the precise substantive question presented here in our written opinions, we have discussed other issues involving the placement of dwellings on agricultural land. *See, e.g., 1000 Friends of Oregon v. LCDC (Polk Co.),* 77 Or App 590, 714 P2d 252 (1986); *1000 Friends of Oregon v. LCDC,* 72 Or App 443, 696 P2d 550, *rev den* 299 Or 584 (1985). Those cases, which construe Goal 3 and various provisions of ORS chapter 215, lend no support to the view that the considerations germane to the permissibility of particular dwellings on farm land are of a clear and objective kind.

for the reasons we have discussed, that is not the case. The permissibility of any dwelling for which a permit is sought depends on facts which are peculiar to itself and which are not determinable by simple reference to general provisions of the ordinance. We hold that ORS 197.015(10)(b) does not apply to the county's decision and does not divest LUBA of jurisdiction over petitioner's appeal.

The county argues that, regardless of the effect of ORS 197.015(10)(b), ORS 197.015(11) has the independent effect of making the issuance of the permit unreviewable by LUBA, because that statute excludes "building permits" and various other "administrative-type decisions" from the definition of "land use regulation." We disagree. As we said in *Bell v. Klamath Co., supra:*

> "ORS 197.015(11) presumes that issuing or denying a building permit is not a 'land use *regulation,'* but it can be a 'land use *decision'* if it involves the application of the goals, a comprehensive plan, a zoning ordinance or other ordinance implementing a comprehensive plan. ORS 197.015(10)(a). * * *" 77 Or App at 134.[5] (Emphasis supplied.)

LUBA erred in dismissing the appeal.

Reversed and remanded.

---

[5] *Dictum* in *Wendlick v. City Council of Gearhart,* 65 Or App 51, 54, 670 P2d 176, *rev den* 296 Or 237 (1983), may suggest the contrary. That *dictum* is disapproved insofar as it does suggest that.