On LCDC's reconsideration and Lane County's reconsideration filed March 18, reconsideration allowed, former opinion (83 Or App 278, 731 P2d 457) clarified and, as clarified, adhered to June 10, 1987
LCDC's reconsideration on denial of attorney fees denied July 24, all petitions for review allowed September 22, 1987 (304 Or 185)
See later issue Oregon Reports

## 1000 FRIENDS OF OREGON,
*Petitioner,*

*v.*

## LAND CONSERVATION AND DEVELOPMENT COMMISSION,
*Respondent,*
## LANE COUNTY et al,
*Intervenors - Respondents.*

(84-ACK-201; CA A33755)

737 P2d 975

Dave Frohnmayer, Attorney General, William F. Gary, Deputy Attorney General, Virginia L. Linder, Solicitor General, and Michael A. Holstun, Assistant Attorney General, Salem, for petition of Land Conservation and Development Commission.

William A. Van Vactor, Eugene, for petition of Lane County.

WARDEN, J.

## WARDEN, J.

The Land Conservation and Development Commission (LCDC) and Lane County petition for reconsideration of our decision in this case. 83 Or App 278, 731 P2d 457 (1987).[1] We grant reconsideration to clarify one aspect of the opinion, to which we adhere as clarified.

In our previous opinion we held that Lane County's criteria for forest dwellings do not comply with the "necessary and accessory" test which LCDC has adopted to evaluate those dwellings. LCDC and the county assert that that holding is inconsistent with our previous affirmance of LCDC's acknowledgment of the Benton County comprehensive plan. *1000 Friends of Oregon v. LCDC,* 72 Or App 443, 696 P2d 550, *rev den* 299 Or 584 (1985) (hereafter *Benton County*). Lane County asserts that it modeled its plan after the Benton County plan. LCDC also argues that our opinion denies it the flexibility in applying Goal 4 which is appropriate. These assertions are based on a misunderstanding of what we decided in *Benton County* and of how the necessary and accessory test functioned in this and previous cases.

Lane County states that the plan we approved in *Benton County* would allow numerous forest dwellings on forest lands. That fact, if correct, does not show that our opinions are inconsistent. There are several significant differences between the cases as they were presented to us. First, the focus of the dispute in *Benton County* was whether LCDC had any flexibility at all in applying Goal 4. We held that it did, in view of the issues presented.

Secondly, the "necessary and accessory" test functioned differently in *Benton County,* and in the previously acknowledged plans which Lane County cites in its petition, from the way that it functions in Lane County's plan. To the degree that LCDC applied the test in *Benton County,* it was simply as one criterion for judging the plan's compliance with Goal 4. Lane County, on the other hand, placed that test directly in its plan. If a proposed dwelling on Lane County forest land meets certain requirements, it is "deemed" necessary and accessory and will be permitted. We therefore had to

---

[1] We previously denied 1000 Friends' petition for reconsideration.

examine the necessary and accessory test—and *only* that test—to determine if homes which satisfy the requirements that the county established would *necessarily* comply with Goal 4. There were simply no other criteria for us to consider. We held that the requirements would permit forest dwellings which were not necessary and accessory to forest use. We adhere to that holding, but emphasize that it does not foreclose other criteria which might comply with Goal 4.

Other acknowledged plans simply require that forest dwellings be "necessary and accessory," without spelling out the details. Under those plans, whether a particular dwelling meets the test will be decided on an individual basis when the county acts on an application for a building permit. There are no criteria in the plans for LCDC or us to consider. Under the Lane County plan, however, the crucial decision is the adoption of the plan rather than the later application for a permit. We must, therefore, determine *now* whether the criteria are sufficient, because later challenges to specific dwellings could not include a challenge to the criteria themselves.[2]

We agree with LCDC that it has flexibility in applying Goal 4. However, it must exercise that flexibility when it adopts its tests, not by trying to apply those tests as if they meant something that they do not mean. If LCDC adopts a test by which to measure compliance with Goal 4, and if we determine that the test is consistent with the goal, we must apply that test according to its terms. If LCDC has a different interpretation of the goal, it can adopt a test which expresses that interpretation. If it has a particular understanding of the test, it can articulate that understanding. If it does either, we can then review the new test or the articulated understanding for consistency with the goal. If LCDC does neither, we can only apply the test as LCDC has stated it. That is what we did in this case, and we adhere to our previous opinion.

Reconsideration allowed; opinion clarified and, as clarified, adhered to.

---

[2] LCDC incorrectly states that the county has defined "necessary and accessory" by the criteria which it adopted. The criteria do not define the meaning of the test. They simply impose requirements, the satisfaction of which, the county has declared, will necessarily show that the proposed dwelling comes within that meaning.