Argued and submitted August 10, reversed and remanded on petition; affirmed on cross-petition September 13, reconsideration denied November 9, petition for review denied November 30, 1989 (308 Or 592)

**FLOWERS et al,**
*Petitioners - Cross-Respondents,*

*v.*

**KLAMATH COUNTY,**
*Respondent - Cross-Petitioner,*

*and*

**BIO-WASTE MANAGEMENT CORPORATION,**
*Respondent - Cross-Respondent.*

(LUBA 88-124; CA A61174)

780 P2d 227

D. Michael Wells, Eugene, argued the cause for petitioners - cross-respondents. With him on the briefs were Keith A. Bartholomew, Portland, and Hutchinson, Anderson, Cox, Parrish & Coons, P.C., Eugene.

Michael L. Spencer, Klamath County Counsel, Klamath Falls, argued the cause and filed the brief for respondent - cross-petitioner.

No appearance for respondent - cross-respondent Bio-Waste Management Corporation.

Before Richardson, Presiding Judge, and Deits and Graber, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners seek review of and Klamath County cross-petitions from LUBA's order dismissing petitioners' appeal from county's site plan approval for respondent Bio-Waste Management Corporation's proposed medical waste incinerator.[1] Petitioners contended before LUBA that county failed to conduct a hearing and to give notice as required by ORS 215.416. LUBA concluded, *inter alia*, that petitioners had exhausted available county remedies, ORS 197.825(2)(a), and that the site plan approval was a "land use decision" subject to LUBA's jurisdiction. ORS 197.825(1); ORS 197.015(10). However, LUBA also concluded that petitioners lacked standing to appeal the decision, and it therefore dismissed the appeal. ORS 197.830(3). Petitioners assign error to LUBA's disposition of the standing question, and county's cross-petition challenges the rulings on exhaustion and on whether county's action is a "land use decision."[2] We reverse on the petition and affirm on the cross-petition.

The proposed incinerator will be used to dispose of medical waste, such as laboratory products, human parts and used instruments. It will have the capacity to burn up to 11 tons of waste daily. The site plan approval was given by the county planning director, who classified the proposed use as "scrap operations," a permitted use in the heavy industrial zone. County did not conduct hearings or follow the notice and related procedural requirements of ORS 215.416 for county actions on permits that are subject to discretionary approval. *See* ORS 215.402(4). Although LUBA agreed with petitioners that the hearing and other requirements were applicable and were not followed, it agreed with county that petitioners had not "appeared" before it and had not adequately pleaded that

---

[1] Petitioners also appealed to LUBA from county's land use compatibility determination, which preceded the site plan approval, and from its issuance of a building permit after the site plan approval was given. LUBA dismissed the first appeal, holding that the compatibility determination was not a final decision. It also dismissed the appeal from the allowance of the building permit on the ground that the site plan approval, rather than the granting of the permit, was the operative "land use decision" under ORS 197.015(10). The disposition of those appeals is not before us.

[2] All three questions are "jurisdictional" in the sense that, by statute, LUBA may not entertain the merits of an appeal if the answer to any of them is no. The reason that LUBA decided all three is that county raised the exhaustion and "land use decision" questions by a preliminary motion that LUBA denied, as relevant, in an interlocutory order. LUBA reached the standing question in its final order.

they were aggrieved or adversely affected by the decision. Therefore, LUBA reasoned, petitioners do not have standing.

ORS 197.830(3) provides:

"Except as provided in ORS 197.620(1), a person may petition the board for review of a quasi-judicial land use decision if the person:

"(a) Filed a notice of intent to appeal the decision as provided in subsection (1) of this section;

"(b) Appeared before the local government, special district or state agency orally or in writing; and

"(c) Meets one of the following criteria:

"(A) Was entitled as of right to notice and hearing prior to the decision to be reviewed; or

"(B) Is aggrieved or has interests adversely affected by the decision."[3]

County argues that petitioners did not appear at a hearing or otherwise, as required by ORS 197.830(3)(b), and that they did not plead how they come within any of the criteria for standing in ORS 197.830(3)(c). Petitioners respond that they could not have appeared at a hearing, because county did not hold one. Its failure to do so is the very thing that petitioners contend makes county's decision erroneous. They also argue that the allegations in their petition to LUBA concerning the failure to conduct a hearing and to give notice are sufficient to establish "aggrievement" under ORS 197.830(3)(c), as construed in *Jefferson Landfill Comm. v. Marion Co.,* 297 Or 280, 686 P2d 310 (1984), and *Benton County v. Friends of Benton County,* 294 Or 79, 653 P2d 1249 (1982).

Petitioners further contend:

"The county argues that the petitioners cannot have standing because they did not appear and did not assert a position on the merits. The appearance requirement for standing cannot apply to decisions that were improperly made without compliance with the notice and hearing mandates of ORS 215.416. Otherwise, counties could easily insulate controversial decisions from judicial review by not issuing notice

---

[3] The standing provisions of ORS 197.830 have been substantially modified by Oregon Laws 1989, chapter 761, section 12.

or holding hearings; that would effectively eliminate any opportunity for the public to appear and foreclose the possibility of any opponent having standing to appeal to LUBA. If this were the case, there would be virtually no way of enforcing the requirements of ORS 215.416; the effect of this court's decisions in *Doughton v. Douglas County*[, 82 Or App 444, 728 P2d 887 (1986), *rev den* 303 Or 74 (1987), and *Doughton v. Douglas County,* 88 Or App 198, 744 P2d 1299 (1987),] could be nullified anytime a county challenged an opponent's standing."

Petitioners are, of course, correct. We have repeatedly held that counties must comply with the requirements of ORS 215.416 and related statutes and have consistently rejected arguments that counties may modify or deviate from those requirements. *See Doughton v. Douglas County,* 88 Or App 198, 744 P2d 1299 (1987); *League of Women Voters v. Coos County,* 82 Or App 673, 729 P2d 588 (1986); *Overton v. Benton County,* 61 Or App 667, 658 P2d 574 (1983). County's present improvisation on that theme posits that, although the statutory notice and hearing requirements are mandatory, the violation of the statute makes itself impervious to review, because the failure to provide notice and a hearing substantially defeats the ability to achieve standing to challenge the failure to provide them.

County argues that there are means other than participation in a hearing by which a person may appear, orally or in writing. That may be true, but it does not alter the fact that the notice and hearing requirements exist, in part, to provide an opportunity to appear and that the failure to discharge them has the effect, if not the purpose, of minimizing the likelihood that anyone will or can appear. County also contends that it was not required to comply with ORS 215.416 here, because its decision was not of the kind to which the statute applies. We will consider county's closely-related argument, that the site plan approval was not a "land use decision," in our discussion of the cross-petition. However, the standing issue is entirely separate; the clear import of county's argument—and of LUBA's decision—is that, *even if* county was required to and did not follow ORS 215.416, petitioners' lack of standing makes that nonfeasance unreviewable.

In *Warren v. Lane County,* 297 Or 290, 686 P2d 316

(1984), the court anticipated an argument similar to the one that county now makes:

> "We have no doubt that a failure of process, such as inadequate public notice, that 'prejudiced substantial rights of the petitioner' could result in negating the legal effect of the county's decision. Petitioners, however, did not seek to have LUBA reverse or remand the county's decision for failure to follow applicable notice procedures. Instead, petitioners sought standing to challenge the merits of the decision as persons 'aggrieved.' We do not here decide what, if any, appeal remedies are available when the local governing body gives defective public or individual notice. For instance, we do not decide whether defective public or individual notice dispenses with the appearance requirement in [ORS 197.830(3)], enabling persons to seek LUBA review of the merits of a local quasi-judicial land use decision, or whether a person who alleges defective notice or some other procedural error, when the person did not appear before the local governing body, can only get LUBA review of the procedural issues." 297 Or at 299, n 12.

*See also Jefferson Landfill Comm. v. Marion Co., supra,* 297 Or at 284, n 2.[4]

■    ORS 197.830(3) governs appeals to LUBA from quasi-judicial land use decisions. Its appearance provision presupposes that required quasi-judicial procedures were followed and that there was something to appear at. In keeping with the suggestion in *Warren v. Lane County, supra,* we conclude that a local government's failure to abide by the statutory procedures, a failure that bears directly on a petitioner's ability to appear, obviates the necessity for making a local appearance in order to have standing to challenge the government's noncompliance with the procedural requirements. Petitioners' contentions that no hearing was held and that no notice was given, which county does not dispute, are therefore sufficient to establish that the appearance requirement of ORS 197.830(3)(b) is inapplicable.

---

[4] Here, unlike *Warren v. Lane County, supra,* petitioners' appeal to LUBA challenged only county's failure to follow the statutory procedures. Therefore, we need not decide whether petitioners would have standing under these circumstances to challenge the substantive "merits" of the decision. Moreover, because a remand to county will be necessary, a decision pertaining to the merits, by LUBA or by us, would be premature.

■     . For similar reasons, we also conclude that petitioners are "aggrieved" within the meaning of ORS 197.830(3)(c). County relies on the test for standing as an "aggrieved" person, formulated in *Jefferson Landfill Comm. v. Marion Co., supra:*

> "1.   The person's interest in the decision was recognized by the local land use decision-making body;
>
> "2.   The person asserted a position on the merits; and
>
> "3.   The local land use decision-making body reached a decision contrary to the position asserted by the person." 297 Or at 284. (Footnote omitted.)

County maintains that petitioners fail that test, because they did not appear and assert a position on the merits.

County's reliance on *Jefferson Landfill Comm. v. Marion Co., supra,* is misplaced, because, again, the principle that county would import was devised in a context that assured that quasi-judicial procedures had been followed. The county did hold a hearing in *Jefferson Landfill,* and the petitioners alleged that they appeared at it and asserted a position on the merits. We do not agree with county that *Jefferson Landfill* means that a person cannot be "aggrieved" by a decisionmaker's failure to conduct a hearing on the theory that the person did not appear and assert a position at the hearing that was not held. We conclude that a petitioner is "aggrieved" by the denial of a statutorily required notice or hearing, at least for purposes of standing to challenge the denial itself.[5] Petitioners have standing.

■     County asserts in the first assignment in its cross-petition that LUBA erred by concluding that petitioners had exhausted their local remedies. Section 41.002 of county's land development code provides that site plan approval applications "shall be subject to the Planning Director Review Procedure." Section 22.005, the appeal provision of that procedure, provides that "a determination of *noncompliance* may

---

[5] County also contends that petitioners' "interest was not recognized by the local land use decision-making body (the Planning Director in this case)." That contention begs the question. The director held no hearing in which the interest could be recognized (or not be recognized). County's statement may or may not be correct, if no hearing were required, but the issue that petitioners have standing to raise before LUBA is whether a hearing and concomitant notice are necessary.

be appealed" to the county governing body. (Emphasis supplied.) There is no provision for an appeal when, as here, the director *grants* site plan approval. County nevertheless contends that petitioners could have appealed to the board of county commissioners from the director's classification of the use as "scrap operations." County bases its argument on section 90.004 of the code, which provides that "[t]he classification of a use is subject to the right of appeal pursuant to Chapter 3."

Petitioners argue that no right of appeal from the classification was available, *inter alia,* because section 33.003, part of the article of the code that section 90.004 incorporates, limits appellate rights to persons who "participated either orally or in writing at the public hearing," and no public hearing occurred. We agree. More fundamentally, we also agree with petitioners that section 22.005 is the specific provision governing appeals in site plan approval proceedings. Petitioners seek review of the site plan approval, not the use classification alone, and section 22.005 does not provide for a county appeal from the director's approval. Petitioners did not fail to exhaust available local procedures.

■    In its second assignment, county contends that LUBA was wrong in concluding that the site plan approval is a land use decision. According to county, the decision to classify medical waste incinerators as "scrap operations" was purely ministerial, ORS 197.015(10)(b), and did not entail the exercise of "any significant factual or legal judgment." *Doughton v. Douglas County,* 82 Or App 444, 449, 728 P2d 887 (1986), *rev den* 303 Or 74 (1987). County directs us to section 90.003(3) of the code, which provides, as material:

> "If the principal uses resemble more than one of the use types on the list, the uses shall be classified in the most appropriate use type, except that any *commercial uses* shall be classified within the scrap operations use type if they have any of its characteristics." (Emphasis supplied.)

County reasons that the incinerator has scrap operations characteristics and that the classification was therefore pretty much automatic. We do not agree. Before the quoted portion of section 90.003(3) can come into play, the use must be commercial. It is at least a matter for significant factual or

legal judgment whether the proposed incinerator is a "commercial type use" or fits better within the civic "extensive impact services and utilities" use type under section 92.009 of the code. Moreover, we are unable to agree that it is factually or legally clear that the use even qualifies for the scrap operations classification. Section 93.024 of the development code provides:

> "The Scrap Operations use type refers to places of business primarily engaged in storage, dismantling or other processing of used or waste materials *which are intended for re-use in their original form.* Typical uses include junk yards or paper salvage yards." (Emphasis supplied.)

Whether the proposed incinerator has scrap operations characteristics under that section, and whether it is a "commercial use" to which the preference for a scrap operations classification applies, are questions that require the exercise of significant and extensive factual or legal judgment.[6] The site plan approval is a land use decision, and the requirements of ORS 215.416 are applicable to it.

Reversed and remanded on petition; affirmed on cross-petition.

---

[6] What classifications can or should be applied to the proposed use are questions that we do not here decide, and our discussion is not intended to imply any view about the answers. The issue now is whether county must exercise significant factual or legal judgment in answering those questions.

We note that, although we discuss and reject county's argument as county formulates it, we do not necessarily imply agreement with the premise that the site plan approval would be a ministerial decision if the use classification was ministerial.